(No. 32117.—)

ALBERT A. CHATKIN *et al.*, Appellants, *vs.* THE UNIVER-
SITY OF ILLINOIS *et al.*, Appellees.

*Opinion filed January 24, 1952.*

Morris K. Levinson, of Chicago, for appellants.

Ivan A. Elliott, Attorney General, of Springfield, William E. Britton, of Urbana, and Chapman & Cutler and Stoffels & Stoffels, both of Chicago, (Ralph F. Huck, and Herbert R. Stoffels, of counsel,) for appellees.

Mr. Justice. Bristow delivered the opinion of the court:

Plaintiffs, Albert A. Chatkin and other public accountants, are prosecuting this appeal from a decree of the circuit court of Cook County, in a proceeding challenging the constitutionality of the Public Accounting Act of 1943, wherein the court held section 4(b) of the act unconstitutional, and enjoined defendants from enforcing it. Defendants, University of Illinois *et al.,* originally filed a cross appeal from that portion of the decree holding section 4(b) unconstitutional; however, after the legislature amended

that section of the act in June, 1951, defendants dismissed their cross appeal.

Although plaintiffs' complaint challenged the constitutionality of the entire act, their argument on appeal has been limited to section 4, and the primary issue presented herein is whether that section of the Public Accounting Act of 1943 (Ill. Rev. Stat. 1947, chap. 110½, par. 28,) or any part thereof, violates the constitutional doctrines of separation of powers, equal protection of the laws, and due process of law.

From the uncontroverted facts it appears that plaintiffs, other than plaintiff Bestock, whose special circumstances will be considered hereinafter, are public accountants, licensed under the waiver provisions of section 10(1)(b) of the Public Accounting Act of 1927, (Ill. Rev. Stat. 1937, chap. 110½, par. 16,) whereby persons who had practiced as public accountants in Illinois for one year prior to the enactment of that act could obtain certificates as public accountants without taking the examination required by that statute and given by the Department of Registration and Education. This 1927 act was comprehensively repealed by the Public Accounting Act of 1943. Under section 4 thereof, it was provided, in substance, that persons licensed as public accountants in Illinois could apply for certificates as certified public accountants if they held their certificates as public accountants on the basis of written examinations under the 1927 act, or on the basis of C.P.A. certificates issued by other States. However, those who received their public accountant certificates without having taken an examination could procure certificates as certified public accountants only if they passed a special oral or written examination under section 4(b), or took the regular C.P.A. examination under section 2 of the act.

Plaintiffs contend in their complaint that section 4(b), which provided for the special examination, as originally enacted, violated the doctrine of separation of powers by

delegating legislative functions to a special board of examiners, without providing any standards for such examinations, in violation of article III and section 1 of article IV of the Illinois constitution, and, consequently, section 4(a)(2), which is germane to section 4(b), must necessarily be deemed void also. Moreover, plaintiffs allege, the classification established by section 4, between public accountants who received their public accountant certificates on the basis of examinations and those who received their public accountant certificates without having taken any examination, unjustly discriminates against plaintiffs, thereby denying them equal protection of the laws in violation of section 1 of the fourteenth amendment of the Federal constitution, and of section 22 of article IV of the Illinois constitution, and depriving them of their property without due process of law in violation of the fourteenth amendment of the Federal constitution and section 2 of article II of the Illinois constitution.

It is urged, on behalf of plaintiff Bestock, who received his public accountant certificate on the basis of passing an examination given by the Department of Registration and Education under the act of 1927, but failed to apply for the C.P.A. certificate within one year after the passage of the 1943 act, that the time limitation therein is an unconstitutional deprivation of his rights.

Defendants deny that the 1943 Public Accounting Act infringed any constitutional doctrines, and alleged in their answer that, according to the legislative history respecting public accountants and certified public accountants, it has been the consistent policy of the State under the acts of 1903, 1927 and 1943, hereinafter analyzed, that persons desiring to style themselves as certified public accountants must pass an examination, and that plaintiffs, except plaintiff Bestock, have voluntarily deprived themselves of this privilege by not taking any examinations at any time, but chose, instead, to secure their licenses solely by virtue of

the waiver provision in the 1927 act. Moreover, defendants allege, the 1943 act did not arbitrarily classify applicants for the C.P.A. certificate into favored classes, but on the contrary it is plaintiffs who are seeking to have the court create a privilege by permitting them to obtain C.P.A. certificates without ever taking an examination under the statute, in violation of the legislative policy. The 1943 act, furthermore, in no way invalidates plaintiffs' certificates as public accountants under the 1927 act or modifies the extent of the practice in which they may engage, and thereby deprives them of no existing rights.

The circuit court sustained plaintiffs' motion to strike defendants' answer, denied defendants leave to file an amendment alleging the character of the examination given under section 4(b), and held that section 4(b) as originally enacted improperly delegates legislative power to the special board which was to conduct the examination, since the statutory provision contained no statement of standards, scope or content of the examination to be given under section 4(b), or any mandatory provision that any rules be made from which a court might determine the standards, scope or content of such examination.

Inasmuch as the court did not expressly hold the remainder of section 4 unconstitutional, plaintiffs have appealed from the decree, urging that section 4(a)(2) is so germane to section 4(b) that it must, of necessity, fall with it, and, furthermore, that section 4 unconstitutionally discriminates against plaintiffs.

During the pendency of the appeal, section 4(b) was amended, (Ill. Rev. Stat. 1951, chap. 110½, par. 28,) and defendants, no longer obliged to sustain the constitutionality of the original section, dismissed their cross appeal. They contend, however, that the circuit court did pass upon and sustain the constitutionality of section 4(a)(2) and the remainder of section 4. In fact, defendants maintain, unless the court did pass thereon, plaintiffs have mis-

taken their remedy and the present appeal could not properly lie.

It is, therefore, incumbent upon this court to ascertain first the scope of the decree of the circuit court, and then determine, in the light of the legislative history and judicial precedent whether section 4, or any part thereof, violates plaintiffs' constitutional rights.

From an examination of the sequence of hearings in the record, it appears that although the court requested the parties to submit briefs upon only the issue of the constitutionality of the original section 4(b), which the court deemed applicable to plaintiffs' status, nevertheless, the court, after examining section 4(a)(2), unequivocally refused to hold it unconstitutional, and struck from the decree drafted by plaintiffs a statement holding that section unconstitutional, despite plaintiffs' argument that section 4(a)(2) and section 4(b) were so closely related that if one provision were held unconstitutional the other must also be deemed void. The court predicated its decision holding section 4(b) unconstitutional, not on the fact that an examination was required of persons in plaintiffs' class, but on grounds peculiar to section 4(b), *i.e.,* that it improperly delegated legislative power to an administrative agency without prescribing proper standards.

Admittedly, the record of the hearings does not reveal oral argument on the issue of whether section 4(a)(2) unjustly discriminated against plaintiffs by requiring them to take an examination, but that issue was raised by the pleadings, and the decree has the legal effect of passing upon and rendering *res judicata* all matters at issue, even though the form of the decree does not expressly so provide. (*Phelps* v. *City of Chicago,* 331 Ill. 80; *Randolph* v. *Hinck,* 288 Ill. 99.) The legal effect of the decision holding only section 4(b) unconstitutional in a proceeding where the constitutionality of the entire act is challenged is that the remainder of the act is constitutional.

In adjudging the propriety of this determination by the circuit court, the terms and provisions of section 4 must be analyzed in the background of the legislation regulating public accountants and certified public accountants. The act of 1903 did not regulate the practice of public accounting, but provided that no person could designate himself as a certified public accountant without having the qualifications set forth in the law, and without first passing an examination given under the law by the University of Illinois. The act did except from the examination requirement persons who for five successive years prior to 1903 had practiced as public accountants, one year of which was conducted in Illinois.

That act remained in effect until the passage of the act of 1943. However, in 1927 the legislature enacted a statute (Ill. Rev. Stat. 1937, chap. 110½, pars. 7-24,) which did not repeal the act of 1903, nor in any way further regulate the use of the title of C.P.A., but, in substance, required persons offering to serve as public accountants to obtain certificates as public accountants from the Department of Registration and Education. These certificates could only be obtained upon passing an examination required by section 6 of the 1927 act, with the exception that they were automatically issued to holders of C.P.A. certificates from the university under the 1903 act, and to persons within the waiver clause of section 10(1)(b) who had been engaged in the practice of public accounting in Illinois for at least one year prior to the passage of the 1927 act. As hereinbefore noted, plaintiffs, other than plaintiff Bestock, obtained their certificates under this waiver provision.

Thus it appears that until the passage of the act of 1943, in order to be designated as a certified public accountant, it was necessary to pass an examination given by the University of Illinois under the 1903 act, but in order to practice public accounting generally, it was necessary to

obtain a public accountant certificate, either by virtue of passing an examination given by the Department of Registration and Education, or by virtue of qualifying under the waiver provisions without taking any examination, or by having passed a C.P.A. examination given by the university or by a foreign State.

In 1943, the legislature provided that all persons in these groups could continue to practice public accounting; that all public accountants who obtained their certificates under the act of 1927 as a result of passing an examination, either in Illinois under the 1903 or 1927 acts, or by an equivalent examination given by some other State, could style themselves as certified public accountants upon making application for such certificates; and that the public accountants who obtained their certificates without taking an examination could secure certificates as certified public accountants by passing a special examination. This latter group was not compelled to take either the special examination or the regular C.P.A. examination, but could continue to practice public accounting under their same title of public accountants.

Prior to the 1951 amendment to section 4(b) that section referred only to a "written or oral examination to be given by a special board of five examiners," and specified the qualifications of the examiners and that a majority vote of the full membership of the board shall be required to approve or reject any applicant.

It is an established constitutional principle, requiring no extended citation of authority, that the legislature may delegate to boards created by it, the administration of statutes involving the conduct of examinations and the issuance of licenses, provided adequate standards are indicated so that no arbitrary action may be taken under the terms of the statute. *People* v. *McGinley*, 329 Ill. 173.

In *People* v. *Brown*, 407 Ill. 565, where the court held unconstitutional certain sections of the Illinois Plumbing

License Law on the ground that the special examining board had sole discretion as to the administration of the statute, and also the right to determine what the law is and apply it to one and not another in like circumstances, the court stated: "Should a statute clothe an administrative officer with the discretion as to the administration of the statute and also clothe him with the right to determine what the law is, or give to him the opportunity to apply it to one and not apply it to another in like circumstances, either would constitute an unlawful delegation of legislative power."

A determination that section 4(b), prior to the 1951 amendment, improperly delegated legislative power would not necessitate holding section 4(a)(2) unconstitutional, as plaintiffs assert. The fact that part of an act is unconstitutional does not require that the remainder shall be void unless all the provisions are so connected as to depend upon each other. (*McDougall* v. *Lueder,* 389 Ill. 141.) If, after the unconstitutional portion is stricken, the remaining provisions are complete and capable of being executed independently of the void portion, the remainder of the act must properly be sustained.

Examination of the Public Accounting Act of 1943 reveals that even if section 4(b) were eliminated from the act there still remains, both in section 4 and in the remainder of the statute, a complete plan of regulation capable of being administered in the manner and for the purposes intended. The legislative purpose of section 4(a)(2) was to permit public accountants, who secured their public accountant certificates by virtue of passing an examination given by the State in subjects which, since 1903, had been required for certified public accountants, to apply for certificates as certified public accountants. The rights of this group were not impaired or otherwise affected by the invalidity of a provision allowing another group of public accountants, who secured their public accountant certifi-

cates by certain waiver provisions and without passing any examinations, to secure C.P.A. certificates by passing a special examination. Nor can it be contended that the legislature would not have allowed the first group to apply for the C.P.A. certificates unless the second group were permitted two methods of acquiring C.P.A. certificates.

The only effect of holding section 4(b), as originally enacted, unconstitutional would be to deprive the group of public accountants referred to therein of an additional means of securing C.P.A. certificates, and would in no way conflict with the method of regulation provided by the legislature. Hence, the circuit court did not err in refusing to hold section 4(a)(2) unconstitutional merely because it concluded that section 4(b) as it then stood was invalid, since the sections are separable and independent.

Plaintiffs assert further that section 4 denied them equal protection of the laws by unjustly discriminating against them by creating a favored group—public accountants who received their public accountant certificates by virtue of passing, not a C.P.A. examination but merely a public accountant examination—and allowing the favored group to become C.P.A.'s without taking an examination, but requiring other public accountants to take a special examination in order to secure a C.P.A. certificate.

It is evident from our review of the legislative history of accounting acts that the passing of an examination has been an essential requirement to procure a C.P.A. certificate since 1903. Plaintiffs, except plaintiff Bestock, have elected not to take any such examination and have relied solely upon the waiver provision under the 1927 act as a basis for their status as public accountants. The fact that the legislature in 1927 permitted accountants with one year experience to become public accountants, without an examination, does not constitute a legal justification for demanding that the legislature must thereafter give them the privi-

lege of becoming certified public accountants without any examination, contrary to the legislative policy of the State.

The fact that other public accountants who secured their public accountant certificates by examination are allowed to become certified public accountants without taking a further examination does not deprive plaintiffs of any rights, since there is a reasonable and proper basis for distinguishing between the two groups. Under the act of 1927 the educational qualifications for persons taking the examination for the public accountant certificate were the same as those for persons taking the C.P.A. examination, and the same subjects were covered in the examinations, except that one was given by the University of Illinois and the other by the Department of Registration and Education. Therefore, it was not unreasonable for the legislature to permit those holding public accountant certificates as a result of passing an examination demonstrating their qualifications to be admitted into the C.P.A. class without another examination.

There was, however, good and sufficient reason for not automatically permitting the holders of public accountant certificates, by virtue of a waiver clause, to pass into the C.P.A. class, inasmuch as there was no assurance of their qualifications, education and experience. Such had not been previously demonstrated in any type of examination. Accordingly, the legislature required of them a special examination.

It is established that a classification founded upon real differences is not unreasonable, and that the discrimination which results therefrom is not arbitrary or a violation of due process. (*Roberts & Schaefer Co.* v. *Emmerson,* 271 U.S. 50.) The Illinois courts have reiterated the tests for determining the constitutionality of a classification. In *Stewart* v. *Brady,* 300 Ill. 425, the court stated: "Its classification of the objects of legislation is not required

to be scientific, logical or consistent if it is reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary. \* \* \* It [classification] cannot be disturbed by the courts unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. It is competent for a legislature to determine upon what differences a distinction may be made for the purpose of statutory classification between objects otherwise having resemblance, though such power cannot be arbitrarily exercised and the distinction must have a reasonable basis."

Courts have recognized, as a legitimate basis of classification, the passing of an examination. In *People* v. *Walder,* 317 Ill. 524, the court upheld the constitutionality of a provision which permitted college graduates who passed an examination for admission into the medical corps of the Army or Navy to practice without any further examination required for others before a license could be issued. The court stated that this distinction was predicated upon a valid basis, since the competency of the exempted physisians was assured by the exactions required of them before they would be admitted into the medical corps, and therefore, the classification was not arbitrary.

Similarly, in *State* v. *Broden,* 181 Minn. 341, 232 N.W. 517, the Minnesota court upheld a classification predicated upon whether an examination was taken at the time a license was issued. The court therein stated: "Some legislative bodies have made the line of demarcation between the old and new standard a certain number of years practice. And this has been held valid, although, where a fixed number of years is made the dividing line, there is room for the argument that there is an arbitrary classification in excluding the one who has practiced a day or week short of the fixed period. It would seem the fact of having taken the examination required by the law at the time the license

to practice was issued is less subject to the charge of arbitrariness or unreasonableness than fixing the time of demarcation upon a certain period of practice."

While the legislature might have classified accountants eligible to apply for the C.P.A. certificate upon whether they did or did not hold public accountant certificates, that was not the only permissible classification. The classification adopted herein, on the basis of whether an examination was taken in qualifying as a public accountant, is reasonably related to the legislative purpose and predicated upon real differences, recognized as valid and reasonable by the courts of this and other States.

It is our judgment, therefore, that the classification imposed by section 4 of the Public Accounting Act of 1943 did not unjustly discriminate against plaintiffs, or in any way deprive them of the equal protection of the laws or due process of law.

With reference to plaintiff Bestock who took the examination as public accountant under the 1927 act, but neglected to apply for his certificate in the year specified in the statute, it is well established that the legislature may validly set a time limit within which a waiver provision may be exercised. (*Kerbs* v. *State Veterinary Board,* 154 Mich, 500, 118 N.W. 4.) The court, in the *Kerbs case,* stated: "The general purpose of the act, and the particular provisions referred to, would in any event require one like relator to apply for registration within a reasonable time after the law became operative. The legislature has determined what is a reasonable time." There is no showing that the time allowed by the legislature was insufficient for the exercise of the privilege, and therefore the failure of plaintiff Bestock to exercise this privilege afforded him no just cause for complaint.

Applying the foregoing analysis of this cause, the decree of the circuit court is affirmed.

*Decree affirmed.*