**Basil D. KTSANES, Plaintiff,**

v.

**Honorable Robert C. UNDERWOOD et al., Defendants.**

**No. 75 C 3421.**

United States District Court, N. D. Illinois, E. D.

March 26, 1979.

Jason E. Bellows, Bellows & Bellows, Chicago, Ill., for plaintiff.

William J. Scott, Atty. Gen. of Illinois, and Herbert Lee Caplan, Asst. Atty. Gen., Chicago, Ill., for defendants.

Before PELL, Circuit Judge, PERRY, Senior District Judge, and McGARR, District Judge.

## OPINION AND ORDER

PELL, Circuit Judge.

This action for injunctive and declaratory relief, invoking our jurisdiction, 28 U.S.C. § 1343(3), to enforce the Civil Rights Act, 42 U.S.C. § 1983, challenges the constitutional validity of Rule 705(d) of the Supreme Court of Illinois. Rule 705 (Ill.Rev.Stat. 1975, ch. 110A, § 705) provides that an attorney who has resided and practiced law in another state for five years may, upon passing a character and fitness test, be admitted to the bar of Illinois. Paragraph (d) of Rule 705 provides:

> An applicant who has taken and failed to pass the bar examination in Illinois shall not be eligible to apply for admission on foreign license.

Plaintiff Basil D. Ktsanes was born in Illinois and resided there until he went to Kentucky to attend law school. He was graduated in June, 1967, then returned to Illinois and took the Illinois bar examination in July but failed to pass. Not finding satisfactory employment in Illinois, he returned to Kentucky and obtained a position there with the Jefferson County Attorney.

In July 1968, the plaintiff took and passed the Kentucky bar examination. He thereupon practiced law in Kentucky until December 1974, when he moved his residence to Illinois. In August 1974, he inquired of the Secretary of the Illinois State Board of Law Examiners how to gain admission to the Illinois Bar. The Secretary sent him a copy of the Illinois Supreme Court rules governing admission to the Illinois Bar, referred him to Rule 705(d), and stated that the Law Examiners had no choice but to follow the provisions of the rules. The plaintiff then petitioned the Justices of the Illinois Supreme Court for a waiver of Rule 705(d) and for his admission subject to his meeting all other conditions as may be ordered by the Court and by the Illinois State Board of Law Examiners. The petition was denied in March 1975. He subsequently filed a complaint in the district court seeking the convening of a three-judge district court, an injunction enjoining defendants Justices of the Illinois Supreme Court and Members of the Illinois State Board of Law Examiners from enforcing the provisions of Rule 705(d), and a declaration that the rule is void and unenforceable because it is contrary to the equal protection clause of the Fourteenth Amendment.

The defendants filed a motion to dismiss. The district court granted the motion on the grounds that it lacked jurisdiction to review a final decision of the Illinois Supreme Court relating to its bar, and that there was a rational connection between Rule 705(d) and the plaintiff's fitness to practice law. The court also denied his prayer to convene a three-judge court. The court of appeals reversed the district court's decision and, in a signed opinion issued on March 23, 1977 held: (1) that the district court did have jurisdiction in that the plaintiff's petition for waiver and its denial did not constitute a judicial proceeding appealable to the Supreme Court of the United States for the reason that he had asked the Illinois Supreme Court to take ministerial action, not to make a judicial determination, and the court therefore acted in an administrative capacity when it denied his petition; and (2) that a three-judge court was necessary to hear the case because a

substantial federal question was raised by the constitutional challenge to Rule 705(d) in that there appeared to be no controlling decision rendering the claim obviously frivolous. *Ktsanes v. Underwood,* 552 F.2d 740 (7th Cir. 1977).

Defendant thereupon filed a petition for rehearing and a suggestion for rehearing *en banc.* Because the petition interpreted the opinion of the court in a manner not intended, the court of appeals on August 15, 1977 issued a per curiam opinion in which it stated that it had not decided the merits of the case and that a three-judge court must still determine (1) whether on grounds of comity and federalism a federal court is precluded from reviewing the State of Illinois rejection of an applicant for the Illinois Bar, and (2) if not, whether the Illinois rule challenged violates the equal protection clause. *Ktsanes v. Underwood,* 560 F.2d 790 (7th Cir. 1977).

Before analyzing whether we should abstain on grounds of comity and federalism, it is important to note exactly what the plaintiff has alleged. He has alleged only that Rule 705(d) violates the equal protection clause of the Fourteenth Amendment. He makes no claim that the rule, properly interpreted, should not apply to him, or that the rule is invalid on any state law ground. Moreover, his equal protection claim is that the rule is unconstitutional on its face, not merely as applied in his case. With this in mind, the abstention analysis is quite simplified.

■ Abstention is a court created doctrine first articulated in 1941 in *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Although the doctrine has expanded to several different forms since the *Pullman* case, it is still broadly defined as a doctrine "under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, [and which] is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976),

quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

■ The Supreme Court has confined the circumstances appropriate for abstention to three categories, in none of which the present case fits. *Colorado River Water Cons. Dist. v. United States,* 424 U.S. at 814–17, 96 S.Ct. 1236. First, "Abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Id.* at 814, 96 S.Ct. at 1244. *See e. g., Lake Carriers Ass'n v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). But in the present case, as in *Zablocki v. Redhail,* 434 U.S. 374, 380 n.5, 98 S.Ct. 673, 677–78 n.5, 54 L.Ed.2d 618 (1978), "there are no ambiguities in the statute for the state courts to resolve, and—absent issues of state law that might affect the posture of the federal constitutional claims—this Court has uniformly held that individuals seeking relief under 42 U.S.C. § 1983 need not present their federal constitutional claims in state court before coming to a federal forum. *See, e. g., Wisconsin v. Constantineau,* 400 U.S. 433, 437–39, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Zwickler v. Koota,* 389 U.S. 241, 245–52, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). *See also Huffman v. Pursue, Ltd.,* 420 U.S. 592 at 609–10 n.21, 95 S.Ct. 1200, 43 L.Ed.2d 482." Rule 705(d) is clear, and the plaintiff has not raised any state law issue regarding its application. Therefore, requiring the parties to repair to the state courts could not "materially alter the constitutional issue presented" and the benefits of such abstention are "too speculative to justify avoidance of the question presented;" accordingly, abstention under this *Pullman* branch of the doctrine would not be appropriate. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 481, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977).

Second, abstention is appropriate when, "absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction

has been invoked for the purpose of restraining state criminal proceedings, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); or collection of state taxes, *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)." *Colorado River Water Cons. Dist. v. United States,* 424 U.S. at 816, 96 S.Ct. at 1246. This branch of the abstention doctrine is clearly not applicable to the present case because there is no pending state court proceeding involving the plaintiff and his relationship to Rule 705.

The third branch of the abstention doctrine is not as clearly defined as the other two. *See generally* 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4244 at 482 (1978). This branch is known as *Burford*-type abstention taking its name from *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Justice Brennan described this branch as follows:

> Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), for example, involved such a question. In particular, the concern there was with the scope of the eminent domain power of municipalities under state law. See also

*Kaiser Steel Corp. v. W. S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); *Hawks v. Hamill,* 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933). In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), for example, the Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields. See also *Alabama Pub. Serv. Comm'n v. Southern R. Co.* [341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951)], *supra.*

*Colorado River Water Cons. Dist. v. United States,* 424 U.S. at 814–15, 96 S.Ct. at 1244–1245. The present case does not fit within *Burford*-type abstention for the simple reason that the present case does not present a difficult question of state law as in *Louisiana Power & Light Co.;* indeed it does not present *any* question of state law.[1] Rule 705(d) is not ambiguous and the plaintiff does not argue that he falls outside the scope of the rule. His only argument is that the rule violates the equal protection

---

1. The fact that the plaintiff does not raise any state law issue distinguishes this case from the *Burford* line of cases. In *Kelly Services, Inc. v. Johnson,* 542 F.2d 31 (7th Cir. 1976), for example, the issue before the district court was whether "temporary help companies" were subject to the regulatory provisions of the Illinois Private Employment Agencies Act. The district court did not abstain, but on appeal the Seventh Circuit held that the district court should have abstained. As part of its rationale for requiring abstention, the Seventh Circuit stated that "[t]he question here is the regulation by the State of activities which touch its citizens' job-seeking efforts. Its courts have not had an opportunity to determine whether the statute in question encompasses plaintiffs' agencies." *Id.* at 33. In the present case, in contrast, there is no issue of state law for the state courts to determine were we to abstain.

clause of the Fourteenth Amendment.[2] Moreover, although federal court review of the plaintiff's claim may well have a disruptive effect on an important state policy if the rule is held to be unconstitutional, the abstention doctrine was not intended to prevent such disruption. Disruption of this sort is inevitable and would be no less severe if the federal court abstained and permitted a state court to hold the rule unconstitutional. "And there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail,* 434 U.S. at 380 n.5, 98 S.Ct. at 678 n.5. Also, this is not a case which involves "a specialized aspect of a complicated system of local law outside the normal competence of a federal court" as in *Burford. Alabama Public Service Comm'n v. Southern Railway Co.,* 341 U.S. at 360, 71 S.Ct. at 774 (1951) (Frankfurter, J., concurring).[3] For these reasons, abstention in the present case would be inappropriate. Accordingly, we now turn to the merits of the plaintiff's equal protection claim.

■■■ His equal protection claim is simply that Rule 705(d)'s distinction between bar applicants seeking admission on a foreign license who have previously failed the Illinois bar examination and those who have never taken the Illinois examination creates a classification that has no rational relationship to the state's legitimate interest in admitting to practice only those applicants displaying the qualifications, fitness, and capacity to practice law competently.

The plaintiff does not allege that a stricter standard of constitutional review than the rational relationship test applies here. Because the distinction drawn by the rule does not involve a suspect classification such as one based on race or ethnic origin and does not involve a fundamental right

such as the right to vote or the right to interstate travel, the plaintiff is correct that the rational relationship level of review is appropriate. *See generally* J. Nowak, R. Rotunda & J. Young, Constitutional Law ch. 16 at 524–26 (1978).

Under the rational relationship standard of review, a classification does not violate the equal protection clause if "it is conceivable that the classification bears a rational relationship to an end of government which is not prohibited by the Constitution." *Id.* at 524. In the present case there is no question that the governmental interest, to insure a competent bar, is legitimate. *See Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474 (7th Cir. 1974). The only question is whether the classification in Rule 705(d) has a rational relationship to that interest.

We are of the opinion that a rational relationship exists in this case and agree with the Illinois Supreme Court's reasoning in finding such a relationship in a case involving a constitutional challenge to an identical rule as applied to a chiropractor seeking to practice on a foreign license after failing the Illinois examination.

The legislature could reasonably infer that foreign applicants who have never taken the Illinois examination are at least presumptively qualified, or are less likely to be employing reciprocity provisions merely as an alternative method of becoming licensed in this State. In any event the legislature is not bound to extend its regulation to all cases which it might possibly reach. It may confine its restrictions to those classes where the need is deemed to be the clearest. (*Thillens, Inc. v. Morey,* 11 Ill.2d 579, 144 N.E.2d 735.) The distinction is predicated upon a valid ground since the assur-

---

2. Even in the plaintiff's petition in the Illinois Supreme Court, he did not argue that Rule 705(d) did not apply to him. He merely requested that the Court waive the application of the rule as to him. He has never suggested that his claim is anything but a federal constitutional claim.

3. In *Burford,* the majority found that the technicalities of oil regulation and the importance of competent, uniform review made it proper for the district court to abstain. No such complexities exist in the present case, and more importantly, there would be no benefit to abstention as the state courts will be no more qualified to review a purely constitutional issue than a federal court.

ance of competency afforded by the foreign license is not present where the applicant has taken and failed the Illinois examination. The difference in treatment is based on a reasonable belief that this assurance does not exist to a sufficient degree in the excluded applicants and we cannot say the legislature acted arbitrarily or unreasonably in excluding them. *Cf. Chatkin v. University of Illinois,* 411 Ill. 105, 103 N.E.2d 498; *People v. Walder,* 317 Ill. 524, 148 N.E. 287. *Sheedy v. Dept. of Registration & Education,* 33 Ill.2d 573, 575, 213 N.E.2d 281, 283 (1966).

For these reasons we hold that Rule 705(d) does not violate the plaintiff's equal protection rights.