O'DELL *v.* OHIO STATE MEDICAL BOARD.

(No. 37590—Decided February 6, 1970.)

Common Pleas Court of Clermont County.

*Mr. Frank O. Walther* and *Mr. E. Allen Parker,* for appellant.

*Mr. William J. Lee,* assistant attorney general, for Ohio State Medical Board.

NICHOLS, J. This matter is before the court for hearing on an appeal from the ruling of the Ohio State Medical Board, which in substance denied a license to the appellant on his contention that he was entitled to a license on his reciprocal rights. The matter has been before the court on two separate occasions: first, for a determination of whether or not Clermont County was the proper county to hear the appeal. The court has heretofore found that it was the proper county and the court does have jurisdiction. That was based upon the fact that the appellant was an actual bona fide resident of Clermont County, even though his office was situated in the state of Kentucky.

Later there was a hearing on the question of the right to introduce additional evidence, that evidence being primarily statements from the American Medical Association, question as to the membership of the State Medical Board in that association, all of which were proffered at the time of the hearing before the Medical Board and refused admission. The court on that hearing, likewise, ruled that the board was correct in not considering that evidence, did not permit it to be offered in the hearing. It again was proffered and is a part of the record.

A motion for reconsideration of the court's ruling on the question of the admissibility of evidence was filed and inasmuch as it is a rather fundamental problem in the determination of the case as a whole, it was decided that the question of admissibility of this evidence and a final determination of the appeal be determined at the same time and with the same briefs of both the appellant and the State Medical Board.

The primary basis of the court for disallowing this type of evidence is based upon the actual ruling of the

Ohio Medical Board, which in substance held that the applicant did not have the actual two-year college work required as a minimum for applicants on the basis of reciprocity and while it gave him the opportunity to submit evidence in respect to this scholastic training which might be considered to be the equivalent to two years college training, the appellant either chose not to submit such evidence or was unable to do so, and has elected to file this appeal on the basis that this portion of the law violated certain of his constitutional rights.

The court, therefore, on the appeal considered that there was an actual rejection of the application for license on the ground that the applicant did not have required preliminary educational requirements which were required by statute and inasmuch as this is a statutory requirement and not a ruling or regulation of the Ohio Medical Board, the makeup of the board, so far as this case is concerned is immaterial. The court will consider the appeal on the basis that this provision of the law and other provisions of the law are or are not in contravention of the constitutional rights of the appellant.

The appellant bases his claim that his constitutional rights have been violated on three major grounds, and on several other grounds which the court feels are minor to the basic question involved, although the attorneys for the appellant may not feel that they are actually minor problems.

The first claim of the appellant is that a chiropractor does not treat a person for a disability and, therefore, as the court understands his contention (as made by his briefs) that he is subject to no regulation by the state of Ohio. His contention is simply that they do not diagnose; they do not treat; they merely make adjustments to the spine, thereby permitting the various nerves of the body to propertly function, and properly functioning, the nerves themselves will cure any disability.

Their second contention, and the one most vigorously argued is that the Ohio State Medical Board is made up of seven medical doctors and one doctor of osteopathy, and

142

where it contains no chiropractor that the board is inherently antagonistic to chiropractors and contend that they either should have representation on the medical board or have a separate board dealing solely with the practice of chiropractic.

Their third major contention is that they are discriminated against in the question of reciprocal licensing, and claim that if they are licensed in one state they should be automatically licensed in Ohio, and further claim that their educational requirements for admission on the basis of reciprocity, which requires under the law, a two year or equivalent college education, while those taking the examination within the state are merely required to have a high school education and that they are claiming by this provision in the statute that they are denied equal protection under the provisions of the federal Constitution.

Their other contentions are that the board does not have a right to delegate to a lawyer the right to make investigations as to their preliminary educational requirements, that all hearings should be before the full board rather than one member of the board and that the statute, on its face, would require them to take a medical course in medicine and surgery rather than their specialty of chiropractic.

The court will give consideration to these contentions in the order stated which is not necessarily in the order of the claims in the brief of the appellant or of the State Medical Board.

It is the contention of the appellant that the practice of chiropractic is that, if the nervous energy can flow uninterrupted to the control centers of the brain, the body, not the practitioner, would cure itself from whatever malady that may be involved.

In other words, they are claiming if the appellant in this case speaks for the group as a whole, that they are not engaged in the healing art, that that is solely a function of the body and they merely make adjustments in the spine and they do not diagnose a disease, but merely analyze the alignment of the various vertebra and, therefore, they are not practicing medicine or are not practic-

ing a limited branch of medicine and, therefore, are not subject to any of the provisions of Section 4731.15, Revised Code, or any of the provisions of Chapter 4731.

The court feels that this is a fallacious argument, for several reasons: first, the Legislature itself states that the practice of medicine and surgery shall include chiropractic along with numerous other branches which are called limited branches of medicine and surgery; second, the courts of Ohio likewise held that chiropractic is a part of the healing arts covered by the law and likewise found the provisions of the State Medical Act constitutional and binding. See *Nesmith* v. *State*, 101 Ohio St. 158 at page 160; *Williams* v. *Scudder*, 102 Ohio St. 305; also *Meeker* v. *Scudder*, 17 Ohio App. 210.

In addition to the state of Ohio, courts holding that chiropractic is a part of the healing arts and subject to regulation by the state, this or similar holdings have been made in states. The court, without citing the specific cases, but for reference, states that they were obtained from Volume 7, Words and Phrases, under the general heading of ''Chiropractic,'' at page 158. The following states made the following observation:

Massachusetts—Chiropractic has been defined as a system of healing that treats disease by manipulation of the spinal column.

New Jersey—Chiropractic has been defined as the practice of adjusting joints especially the spine, by hand, for the curing of disease.

Pennsylvania—Chiropractic is a method of restoring health by palpating the spinal column for subluxations or misplaced vertebrae.

Texas—Chiropractic is a system of adjusting joints of the spine by hand for curing of disease.

New York—Chiropractic is a system of healing disease by manipulation of the spinal column.

Montana—Chiropractic is a system of adjusting the joints especially the spine by hand for curing of disease.

Mississippi—Chiropractic is a system of healing which treats disease by manipulation of the spinal column.

California—Defines chiropractic as a system of prac-

tice of adjusting the joints especially of the spine by hand for the curing of disease.

Illinois—Chiropractic is a system or the practice of adjusting the joints especially of the spine by hand for the curing of disease.

Kansas—Chiropractic means primarily hand manipulation and the word is applied to a system of healing that treats disease by manipulation of the spinal column.

These and many other decisions are available to show that the courts have universally decided that chiropractic is a system of healing and is subject to regulation by the state.

Whether or not this specific point was raised in this or other cases the court feels that there can be no logical finding based upon this claim. This court had an unfortunate accident recently and during the progress of this trial, where his ankle was broken. He went to a trained orthopedic surgeon who, with the help of an X-ray, adjusted and realigned the bones in the ankle, placed the ankle in a cast and let nature do the healing, and the bones have successfully knit together. The court can see no great difference between an orthopedic surgeon setting a bone and keeping it in place until nature unites the bone than for a chiropractor to adjust subluxations of the vertebra and permit the free flow of messages over the nervous system and thereby permit nature to heal any and all ailments that might be in the different parts of the body, so, therefore, this claim of the appellant will be, and is rejected.

The second contention of the appellant is that the set-up of the Ohio State Medical Board is such that it has prohibited him from obtaining a license. There was cited at the hearing and in the court the statement of policy adopted by the AMA House of Delegates in November 1966. The first paragraph of that reads as follows: "It is the position of the medical profession that chiropractic is an unscientific cult whose practitioners lack the necessary training and background to diagnose and treat human disease. Chiropractic constitutes a hazard to rational health care in the United States because of the substandard and

unscientific education of its practitioners and their rigid adherence to an irrational, unscientific approach to disease causation."

In the brief of the appellant at page 31 there is a complaint against the physicians which, if it exemplifies the feeling of the appellant and the chiropractors as a whole, intensifies the antagonism between the two groups. The statement, seemingly taken from a study at Yale University, states, "Physicians and modern medicine have thus become a close rival of cancer and heart disease as a major killer of men." With this feeling in mind the appellant has stated that because of the fact that the Legislature has seen fit to have a medical board composed of seven medical doctors and one osteopathic doctor that he has then been deprived of his constitutional rights for lack of representation on this board, or actually what he claims is that he should have an entire board made up solely of chiropractors. They cited the fact that many states have chiropractors on their medical boards and that only two states, one of which is Ohio, has medical boards without a representative of chiropractics. They state and rely quite heavily on the case of *State* v. *Gravett* (1901), 65 Ohio St. 289. This case establishes that osteopaths were at that time a recognized system of the practice of medicine as was referred to in the Medical License Act in force at that time. They likewise recognize that the Legislature had the power to make reasonable standards respecting the qualifications of those who indulge in the healing art.

As the court reads the third syllabus of that case, they held that it was improper to require osteopaths schooling that was impossible to conform with. In other words, the statute at that time required four years of study and there seemingly was no school in existence that had that type of class in osteopathy and, therefore, upheld a demurrer to an indictment on the ground that the law as it then stood, required an osteopath to do the impossible. Sometime later, and I believe after an expansion of the schooling for osteopathic doctors was made, then one of the eight members of the medical board was required to be an osteopath.

The reason the court felt at the time of the application to have additional evidence admitted, including the admission of the statement of policy of the delegates of the AMA is that there is no such requirement in the law requiring chiropractors to have a greater amount of study than medical doctors (the court will refer to the contention of the defendants upon their supposed requirements to attend a medical school in the latter section of this opinion), and the only matter of which the appellant is now complaining is that the law and the regulation of the medical board requires, before reciprocity will be considered, that a person applying for license on the basis of reciprocity have a minimum of two years college work, this to be in addition to a graduate from high school. In this day and age, certainly that is a minimum requirement so far as general education is concerned for anyone entering into any of the healing arts.

In this particular case, the appellant actually has not graduated from high school and he did submit educational activities that he claimed were equivalent to a high school graduation and this has not been questioned by the board. The only thing that was questioned is that he was required to have a two-year college course and that he does not have and has not seen fit to offer any evidence of the equivalent in educational services. His record shows he has attended chiropractic schools, taken postgraduate training in chiropractic, and as far as this court knows, there has been no claim that he has not taken the prerequisite training in his particular branch of medicine.

These matters have been held valid by the Supreme Court of Ohio in many instances. In the case of *Williams* v. *Scudder, supra,* cited extensively in the brief of the attorney general, as reported in 102 Ohio St. at page 305. This case was decided in 1921 and recognizes the power of the Legislature to provide regulation of public health and stated that the Legislature is the judge of the need and that the exercise of that judgment must be given wide discretion. Likewise, in syllabus seven held that the regulation of the practice of medicine and the registration of

practitioners in the limited branches thereof is a constitutional and valid exercise of legislative power.

That case involved chiropractors and was, of course, at a time when no chiropractor was on the board. A similar type case is the case of *Nesmith* v. *State* in a brief per curiam opinion in 1920 and recorded in 101 Ohio St. page 158, which likewise held the State Medical Act valid and constitutional.

A more recent case, *State* v. *Zollinger*, 168 Ohio St. 345, in a memorandum opinon sustaining a conviction of a party practicing chiropractic without a license. The note of the facts in that case is contained in 7 O. O. 2d 116. So the court feels that the question of the constitutionality of the act, including the personnel of the medical board has been very definitely decided by the Supreme Court on many occasions, and it is certainly beyond the power of this court to overrule these decisions.

One other matter that is in consideration is that there are a very large number of limited branches in addition to chiropractors including:

"4731.15 Examination and Registration of Practitioners of Limited Branches of Medicine or Surgery.

"The State Medical Board shall also examine and register persons desiring to practice any limited branch of medicine or surgery, and shall establish rules and regulations governing such limited practice. Such limited branches of medicine or surgery shall include chiropractic, naprapathy, spondylotherapy, mechanotherapy, neuropathy, electrotherapy, hydrotherapy, suggestive therapy, psychotherapy, magnetic healing, Swedish movements, massage, and such other branches of medicine or surgery as the same are defined in Section 4731.34, Revised Code, except chiropody (podiatry), midwifery, and osteopathy."

If the reasoning adopted by the petitioner in this case would be sound in regard to chiropractors, it would likewise be sound as to each and every other of the limited branches and they would have to set up a special examining board for each of them who could set up the standards and pass on the qualifications of those who desire to re-

ceive licenses. Similarly some other type of healing could ask that they be either eliminated from supervision of the State Medical Board altogether, or be required to have a separate licensing board of their own.

For instance, if someone would start a school of doctor of hynosis on the same reasoning, they could come in and say, "We want a special examining board for hypnotics who use that in connection with healing, and we want either to be permitted to do that indiscriminately or to have our own licensing board."

The Legislature is given authority to enact laws. The Supreme Court in the case of *State, ex rel. Dickinson,* v. *Deffenbacher,* 142 Ohio St. 164, states that an act is presumed to be constitutional and before it could be declared unconstitutional it must appear beyond a reasonable doubt that the legislation and the constitutional provisions were clearly incompatible.

There is no provision as far as this court knows requiring an examining board for any group or profession to be made up of the particular members of that group. The court can see no particular reason why a group of educators, for instance, could not be authorized to provide for the examination of doctors.

Chapter 47 of the Ohio Revised Code sets up the procedure for licensing various occupations and professions, including accountants, architects, attorneys, auctioneers, barbers, cosmotologists, dentists, embalmers, funeral directors, nurses, optometrists, pawn brokers, pharmacists, physicians, professional engineers, real estate brokers and veterinarians. Each of these has a separate type of examining board. While most of them do have the board made up of members of their own profession, it is not always true. For instance, an accountant must be certified by a certified public accountant. A dental hygienist must be examined by a board composed of dentists. Embalmers must be examined by a board of both embalmers and practicing funeral directors. The nurses examination does have a division between registered nurses and licensed practical nurses. Pawn brokers are licensed by the division of

securities. The professional engineers board is composed of four engineers and one surveyor. The real estate brokers are under the real estate commission and they are authorized to grant special broker's licenses or special salesmen licenses. The chief engineer examines all people asking for licenses for engineers, but the statute does not specifically state that he, himself, must be licensed. Veterinarians are licensed by a board composed solely of veterinarians.

In addition to these professions and businesses there are licensed insurance agents and insurance salesmen. They are licensed by the superintendent of insurance, and as far as the court can ascertain, there is no requirement that the superintendent be an active or licensed insurance agent or broker.

It will be seen from this that the question of licensing various businesses or professions is set up by the Legislature and it is their prerogative to decide upon the members of the board that makes the examination. It will, therefore, be ruled that the Ohio State Medical Board is properly and legally set up and is not in violation of any provision of the state or federal Constitutions.

The third contention is that the appellant's rights were violated because he claimed that he was not granted equal protection under the provisions of the federal constitution. Many cases have been decided involving various and sundry rights under the federal Constitution, most of them being based upon claimed violation of civil rights. The court knows of no decision that states that merely because a person is licensed in a profession or in a business in one state of the union, he automatically has the right to practice that profession in any other state of the union. We hear many decisions about the fourth, fifth, sixth and fourteenth amendments, but the seemingly forgotten amendment is Article X, original amendment, which reads as follows:

"Article X. Rights of state under constitution—The powers not delegated to the United States by the constitution or prohibited by the other states are reserved to the states respectively or to the people." The right of the

states to control their people and their business, to license them by professions has been recognized by both state and federal courts, and it certainly is the existing law in the state of Ohio.

This court was very happy to have Mr. Frank O. Walther, an attorney at law, admitted to practice in the state of Pennsylvania, but not in the state of Ohio, to participate in this particular case, but he did so, not as a matter of right, but a matter of courtesy on behalf of the court which is, of course, normally extended to visiting lawyers. However, if he had attempted to set up a law office in the state of Ohio and hold himself out generally to practicing law in the various courts of the state of Ohio without being subject to licensing, he would have run afoul of the law and been subject to punishment.

In the same way, any lawyer licensed in Ohio attempting to go to Kentucky, Indiana, or any other state, would have to abide by their rules so far as the admission to practice in that particular state. The court understands that in some of the states, particularly Florida and California, that it is extremely difficult to have reciprocity for either doctors or lawyers, and that is quite understandable because many doctors or lawyers in the normal retirement age would like to continue in a limited way their practice, and would set up offices in one of those retirement states, and to the detriment of the practicing lawyers and physicians in that particular state. So, therefore, these states have, and rightfully so, set up restrictions and limited the practice of either law or medicine by persons licensed in other states.

I am sure the same rule applies to real estate brokers and nurses, funeral directors, engineers, accountants, dentists, all of whom are required to follow the rules of their respective boards before they can be admitted to practice or do business in this state. These will vary in respect to each of the particular businesses or professions, but all have some type of rules and regulations.

The appellant complains that he is discriminated against in that a resident of Ohio is only required to have a

high school education, while a person seeking admission on reciprocitey must have two years of college. There might be some legitimate complaint by persons, in particular, by the public, and more particularly by the medical board, that a two-year college education should be required for all persons desiring to practice chiropractics, and certainly it is not an unreasonable requirement. The two situations are not the same.

A resident of the state has to be a high school graduate and take an examination in this state. The nonresident seeking reciprocity, instead of taking an examination, must among other things, show he has had two years of college and that is the difference. There is no reason, as far as this court sees, that the appellant in this case could not apply as a resident of the state and comply with those rules and regulations and be given the same rights as any other resident of the state applying for a license.

The court will, therefore, hold that there is no provision of either the state or federal constitution requiring a reciprocal arrangement between any other state for the licensing of any business or profession. That is strictly a matter of the state policy and that policy is fixed by the Legislature. The state does not have to admit a lawyer or doctor, a chiropractor, a real estate agent, a funeral director from any other state unless it so desires, and so provides by law and may set up such standards as they feel proper in respect to this reciprocal agreement.

Reciprocity means an agreement between two states whereby the licensees of one state can be accepted by another state provided the first state will grant the ruling of the state, itself. The court holds that the question of reciprocity is strictly a matter of legislative policy and the provisions of the Ohio law, and the rulings of the Ohio Medical Board violate no provisions of the state or federal constitution.

The last section of this decision will be based upon what the court feels to be somewhat minor claims of the appellant. First, that the hearing was not before the board as a whole, but was before only one member. In

**152**

this particular case the doctor that held this examination was an osteopathic doctor, which to a certain extent counteracts the claim of prejudice by the American Medical Association, as certainly a doctor of osteopathy is not a member of that organization. The point the court makes, however, is that the action of the medical board was the action by the board, and not by any individual.

This procedure is followed in many matters throughout the state. A judge, for instance, can in certain instances, appoint a referee. The referee makes recommendations but the judge makes the final decision. Workmen's Compensation Board provides for hearing by an examiner. They hear the testimony, make recommendations, but the board, itself, is the one that makes the final decision. In the same way complaint is made that the board had appointed a lawyer to make examinations of the preliminary educational qualifications of all applicants. This was done and certainly that does not involve any medical determination, and the court holds that it is entirely proper to appoint such an investigator, but he, in turn, does not have the final say. It is the board, itself, that must finally determine his actual qualifications.

The final contention, which on its face, has some merit, is that the appellant claims that in respect to chiropractors, they would be required to, before obtaining any reciprocal benefits, take an examination in medicine and surgery as is provided by Section 4731.29 and 4731.09, Revised Code. This might have been true prior to the amendment of Section 4731.18, Revised Code, amended as of December 1, 1967. This section, in substance, provides that the medical board may dispense with the examination of applicants for limited certificates to practice a limited branch of medicine or surgery as is provided in Section 4731.29, Revised Code, which does require examinations in medicine and surgery. However, in 1967 there was added to this section the following words, "In such case the medical board shall recognize national examining boards of the appropriate limited branches of medicine." So in the case of chiropractors there is no requirement for them to

attend medical school or take a medical examination as the statute now specifically provides that each special branch be examined or accepted in their particular specialty. Even prior to the amendment, I am certain that the medical board did not require any of the special branches to be a graduate from a recognized medical school and to meet all the requirements of medical doctors, and I do not think any court would have interpreted the statute to that effect; however, the court feels that that has been corrected by the Legislature and, therefore, the claim that the chiropractors are required to take medical training is not valid.

The court, therefore, rules that the medical board was within its rights to exclude evidence that was excluded, and the court likewise rules that it was not proper evidence in this particular case, and the motion to permit additional testimony will be overruled.

The court considering the question of the constitutionality of the act as is outlined by the claim of the appellant rules that he has not been deprived of any of his constitutional rights, either under the federal Constitution or the Constitution of Ohio. The court, likewise, rules that the ruling of the medical board requiring the appellant to actually conform to the statute in reference to his premedical educational qualifications was proper.

It will, therefore, be ordered that the ruling of the Ohio State Medical Board in respect to the appellant, Carson S. O'Dell be affirmed. An entry based upon this decision may be prepared by the attorney for the State Medical Board and in such entry he will reserve the exception of the appellant to this ruling of the court.

*Ruling affirmed.*