**Alva Owen HAWKINS, Appellant,**

v.

**Honorable Joseph R. MOSS, Chief Justice, et al., Appellees.**

**No. 73–1601.**

United States Court of Appeals, Fourth Circuit.

Argued May 1, 1974.

Decided Sept. 18, 1974.

Neil Bradley, Atlanta, Ga. (Laughlin McDonald, Morris Brown, Emily Carssow, Atlanta, Ga., P. King Holmes and H. Christopher Coates, Columbia, S. C., on brief), for appellant.

Ellison D. Smith, IV, Asst. Atty. Gen., (Daniel R. McLeod, Atty. Gen., and Donald V. Myers, Asst. Atty. Gen., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The plaintiff, a lawyer admitted to practice in the Courts of New Jersey, has, according to his complaint, established a residence in South Carolina (though retaining a desk in a law office in New Jersey) and he seeks to gain admission to the Bar of South Carolina without submitting to the normal requirement of taking an examination in order to demonstrate his legal competency or proficiency. He bases his claim for exemption from such examination on Rule 10 of the Rules for the Examination and Admission of Persons to Practice Law in South Carolina, as promulgated by the Supreme Court of South Carolina and outstanding at the time he filed his application.[1] This Rule grants an exemption from the normal examination requirement for attorneys licensed to practice in another State.[2] One difficulty in plaintiff's endeavor to avail

---

1. After this action was filed, the Supreme Court of South Carolina repealed Rule 10, thus adopting the rule of New Jersey which authorizes no exemption from the requirement of a written examination. By reason of this repeal, the defendants urged dismissal of the action as moot. The plaintiff, on the other hand, contended that such repeal could not affect his rights which had "vested" under the Rule as it existed when he applied for and was denied exemption. Cf., however, Dantzler v. Callison (1956) 230 S. C. 75, 94–95, 94 S.E.2d 177, app. dismissed 325 U.S. 939, 77 S.Ct. 263, 1 L.Ed.2d 235; State v. Austin (1956) 246 Minn. 514, 75 N. W.2d 780, 784. In *Dantzler*, the Court held that rules of admission to practice a profession in a State might be changed or modified "without subjecting the action to the charge of interfering with contract or vested rights." However, it seems that even after the repeal of Rule 10, some applicants had their applications processed under that Rule. Such action, it is thought, undermined the claim of mootness.

2. "Rule 10

"Any attorney admitted to practice law in the highest court of the District of Columbia or in the highest court of another state in which the standard of admission is substantially equivalent to the standard of this State, who has been actively engaged for at least five (5) years next preceding filing of his application, either in the practice of law or, during said period has been a judge of a court of record or teacher of law, may be admitted to the Bar of South Carolina, without examination, upon satisfactory proof that he is a citizen of the United States and an actual resident of this State and intends to practice or teach law therein, is at least 26 years of age, and a person of good moral character. Application, accompanied by a fee of $125.00, shall be filed with the Clerk of the Supreme Court on such form as the Committee on Character and Fitness shall prescribe and there shall be filed therewith (a) a certificate of the Clerk of the highest court of the District of Columbia or of the state in which he has practiced showing the date of his admission and his present standing, (b) a letter or certificate of a Judge of a court of record in which the applicant has practiced certifying to his character and standing, and (c) affidavits of three attorneys of this State attesting to his good moral character. The Clerk shall refer such application to the Committee on Character and Fitness who shall make the necessary investigation to determine whether the applicant meets the requirement herein specified. As a part of such investigation, the Committee shall obtain a report from the National Conference of Bar Examiners as to the applicant's moral character and professional standing. If the applicant is favorably recommended by the Committee he may, in the discretion of the Court, be admitted to the Bar of this State upon the payment of a further fee of $10.00 to the Clerk of the Supreme Court and taking the oath prescribed by Rule 7.

"The fee of $125.00 above mentioned shall not be refunded in the event the application is withdrawn or rejected. Thirty dollars of

himself of this exemption is, however, that Rule 10 is a reciprocity provision, the application of which in favor of any applicant is expressly conditioned upon the grant of "reciprocity on substantially equal terms to attorneys licensed in this State" by the State in which the applicant is licensed. New Jersey, the only State in which plaintiff has gained admission to the Bar, does not grant reciprocal rights to attorneys licensed by the Supreme Court of South Carolina. It is, however, plaintiff's contention that such a reciprocity limitation or condition incorporated in the Rule is unconstitutional and he seeks a declaratory judgment to that effect, predicating federal jurisdiction on Sections 1343(3) and (4), 2201, 2281 and 2284, 28 U.S.C. In seeking such a declaratory judgment, he petitioned the District Court to request the convening of a 3-judge court under Sections 2281 et seq., 28 U.S.C. The District Court held that plaintiff's complaint posed no substantial federal issue, refused the request for the convening of a 3-judge court [3] and dismissed the action.[4] The plaintiff has appealed. We affirm.

At the outset it must be recognized that plaintiff's admission to the Bar of New Jersey does not *per se* confer on him any absolute right to be admitted to the practice of law in South Carolina. The power of the courts of each state to establish their own rules of qualification for the practice of law within their jurisdiction, subject only to the requirements of the due process or equal protection clauses of the Fourteenth Amendment, is beyond controversy; in fact, it is a power in the exercise of which the state has "a substantial interest." [5] It necessarily follows that

said amount shall be retained by the Clerk of Court as part of his compensation and the remaining $95.00 and the fee of $10.00 paid upon admission shall be placed in the separate fund kept by him for the purpose of paying the expenses incurred by the Committee on Character and Fitness.

"Attorneys from states not extending reciprocity on substantially equal terms to attorneys licensed in this State shall not be admitted under this rule."

3. We find it unnecessary to consider whether the complaint raised such a substantial constitutional issue as to call for the convening of a 3-judge court. After its repeal Rule 10 could not have application to anyone but the appellant and hence at the time the action was filed Rule 10 was not a rule of statewide application, the challenge to which would require the convening of a 3-judge court. *See* Moody v. Flowers (1967) 387 U.S. 97, 101, 87 S.Ct. 1544, 18 L.Ed.2d 643. Apart from the issue of the propriety of convening a 3-judge court, the District Court found the Rule as it formerly existed and as applied solely to the appellant valid and it is that conclusion which is the subject of review here.

4. The defendants raised other objections to the right of the plaintiff to the benefit of the exemption provided by Rule 10. Thus, the Rule is only applicable to one "who has been actively engaged for at least five (5) years next preceding filing of his application, either in the practice of law or, during said

period has been a judge of a court of record or teacher of law * * *." Prior to 1969, plaintiff was employed as an attorney at the Picatinny Arsenal, Dover, New Jersey. He retired in that year and had desk space in the law offices of Gersten and Chase, Newton, New Jersey. From his deposition, his presence in the office may have been irregular, and the range of his practice was not clearly developed. Whether he was "actively engaged" in the practice of law for five years prior to his application in 1971 was put in issue by the defendants, both in their administrative denial of plaintiff's claim to an exemption and in their answer and was unresolved by the District Court, which considered the validity of the reciprocal provision of the Rule conclusive. This was an issue that could only be resolved after a factual hearing.

5. Law Students Research Council v. Wadmond (1971) 401 U.S. 154, 159–160, 91 S.Ct. 720, 27 L.Ed.2d 749; Sperry v. Florida (1963) 373 U.S. 379, 383, 83 S.Ct. 1322, 10 L.Ed.2d 428; Konigsberg v. State Bar (1961) 366 U.S. 36, 40–1, 81 S.Ct. 997, 6 L.Ed.2d 105; Brown v. Supreme Court of Virginia (3-judge ct. D.C.Va.1973) 359 F.Supp. 549, 555, aff. 414 U.S. 1034, 94 S.Ct. 534, 38 L.Ed.2d 327; West Virginia State Bar v. Bostic (D.C.W.Va.1972) 351 F.Supp. 1118, 1121; Mackay v. Nesbett (D.C.Alaska 1968) 285 F.Supp. 498, 503, aff. 9 Cir., 412 F.2d 846, cert. den. 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425, reh. den. 397 U.S. 1004, 90 S.Ct. 1111, 25 L.Ed.2d 417; West Virginia

licenses to practice law, granted by the courts of one state, have no extraterritorial effect or value and can vest no right in the holder to practice law in another state.[6] To acquire a right to practice in another state one must satisfy the requirements for qualification established by that state. It thus matters not what examinations the applicant has undergone in the state where he is presently licensed; he is still compelled to satisfy reasonable standards for competency and character as fixed by the new state in which he seeks the right to practice unless, under some provision of that state's court rules or statutes, those requirements are excused or dispensed with. To be specific, the fact that the plaintiff has undergone successfully a written examination on his professional competency in New Jersey will not excuse him from compliance with a requirement that he establish his competency by a written examination conducted under the directions of the Courts of South Carolina, before he may qualify for admission to the Bar of South Carolina. So much the plaintiff concedes.

■ As already indicated, the single point of difference between the parties, as presented by this appeal, arises in connection with the application of Rule 10. It is the gravamen of the plaintiff's complaint that Rule 10 discriminates illegally or "invidiously" against persons licensed by states not granting reciprocal rights to attorneys admitted to practice by the Supreme Court of South Carolina and is, accordingly, violative of the equal protection clause of the Fourteenth Amendment.[7] Arguing from that premise, the plaintiff contends that he is entitled to the exemption from examination given by the Rule, even though New Jersey, the only state in which he is admitted to practice, denies such exemption to attorneys licensed by South Carolina who may seek authority to practice law in New Jersey. In substance, the plaintiff challenges the constitutional validity of conditioning the exemption from written examination granted by Rule 10 on reciprocity and asks a judicial determination that reciprocal professional licensing rules and statutes as adopted by the vast majority of the states infringe the constitutional rights of individuals licensed by states not according reciprocity.

■ State reciprocity statutes or regulations such as Rule 10 are not unusual. In fact, they have been adopted by the vast majority of the states and apply particularly in the field of professional licensing.[8] They represent a

State Bar v. Earley (1959) 144 W.Va. 504, 109 S.E.2d 420, 430–431 (cited with approval in *Sperry*).

6. Sperry v. Florida, *supra* (373 U.S. at 383, 83 S.Ct. 1322); Cohen v. Hurley (1961) 366 U.S. 117, 123, 81 S.Ct. 954, 6 L.Ed.2d 156, reh. den. 374 U.S. 857, 85 S.Ct. 1860, 10 L. Ed.2d 1083; State v. Perkins (1934) 138 Kan. 899, 28 P.2d 765, 767; In Re Opinion of the Justices (1932) 279 Mass. 607, 180 N.E. 725, 727, 81 A.L.R. 1059; In Re Roel (1957) 3 N.Y.2d 224, 165 N.Y.S.2d 31, 144 N.E.2d 24, 29; Application of Stone (1957) 77 Wyo. 1, 305 P.2d 777, 781, cert. den. 352 U.S. 1026, 77 S.Ct. 593, 1 L.Ed.2d 598; Ex Parte Perkins (1954) 224 La. 1034, 71 So.2d 558, 559; In Re Avery's Petition (1961) 44 Haw. 597, 358 P.2d 709, 710; Application of Steelman (Alaska 1969) 448 P. 2d 817, 819; *cf.*, Chudoff v. McGranery (3d Cir. 1950) 179 F.2d 869, 872.

7. It will be noted that Rule 10 does not establish a requirement that must be satisfied

in order for the applicant to qualify for professional licensing or as a condition of his right to take the bar examination, itself, as in Keenan v. Board of Law Examiners of State of N. C. (3-judge ct. D.C.N.C.1970) 317 F.Supp. 1350. Other provisions of the Rules of Admission fix those requirements, one of which, relevant to this controversy, imposes the obligation on the applicant to establish his legal proficiency by a written examination. This latter requirement is concededly a perfectly valid requirement. Rule 10, on the other hand, is an *exemption* provision, which excuses certain applicants meeting specified conditions from that examination requirement. The constitutional validity of the exemption thereby granted turns on whether it violates the equal protection clause of the Fourteenth Amendment or the "privileges and immunities" clause of Article IV.

8. So far as admissions to the Bar are concerned, only ten states, it seems, refuse to

state's undertaking to secure for its citizens an advantage by offering that advantage to citizens of any other state on condition that the other state make a similar grant.[9] To secure for her citizens the reciprocal rights and advantages obtained under such statutes or rules is manifestly a legitimate interest and goal on the part of a state just as it is a legitimate interest of one nation to secure reciprocal property rights for its citizens in other nations.[10] It is true, as the plaintiff argues, these statutes and rules treat differently those individuals admitted to practice their profession in states extending reciprocal rights and those from states not so granting those rights. But the mere fact that they "affect some groups of citizens differently than others" or that they "result in 'incidental individual inequality'" will not render such statutes or rules invalid.

Martin v. Walton (1961) 368 U.S. 25, 26, 82 S.Ct. 1, 7 L.Ed.2d 5, reh. den. 368 U.S. 945, 82 S.Ct. 376, 7 L.Ed.2d 341. It is a familiar rule of constitutional law that a statute or rule promulgated under state authority will be found to violate equal protection *only* when it results in discrimination against a certain class and the classification is not rationally related to any legitimate state policy or interest. McGowan v. Maryland (1961) 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393; San Antonio School District v. Rodriguez (1973), 411 U.S. 1, 40, 93 S.Ct. 1278, 36 L.Ed.2d 16, reh. den. 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418; Sams v. Ohio Valley General Hospital Association (4th Cir. 1969) 413 F. 2d 826; Brown v. Supreme Court of Virginia, *supra* (359 F.Supp. at 554–555).[11] Reciprocal statutes or regulations, it has been uniformly held, are de-

---

recognize reciprocity. Brown v. Supreme Court of Virginia, *supra* (359 F.Supp. at 553).

9. Starr, Reciprocal and Retaliatory Legislation in the American States, 31 Minn.L.Rev. 371, 372 (1937):

"One state enacts legislation to be operative on behalf of the citizens or officials of another state upon condition that the other state enacts like or corresponding legislation. Reciprocal legislation is thus conditional or contingent legislation, since it depends for its full effect upon an event beyond the control of the enacting legislature, that is, the passage of a similar act by a foreign legislature."

Spindel v. Jamison (1958) 199 Va. 954, 103 S.E.2d 205, 208, defines reciprocity legislation thus:

"\* \* \* Reciprocity denotes mutuality, or the relationship existing between states when each gives the citizens of the other certain favors or privileges that its own citizens enjoy at the hands of the other state."

See, also, Fales v. Commission on Licensure to Prac. Heal. Art (D.C.Ct. App. 1971) 275 A.2d 238, 240:

"Reciprocity has been used extensively in the area of the professions. This is because states are under no obligation to recognize licenses for professions issued by other states since these licenses issued by one state are not extraterritorial; and no rule of comity requires a state to grant such licenses merely because a person has

been admitted to practice in another state."

10. *See*, Zschernig v. Miller (1968) 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683, reh. den. 390 U.S. 974, 88 S.Ct. 1018, 19 L.Ed.2d 1196; Lenhoff, Reciprocity: The Legal Aspects of a Perennial Idea, 49 N.W. Law R. 619 (1954).

11. In *Sams, supra*, the Court said:

"Illustrative of this doctrine are the holdings that if there is a rational basis therefor, separate treatment of professionals even of the same calling is permissible." (413 F.2d at 829)

The appellant, as did the appellant in Lombardi v. Tauro (1st Cir. 1972) 470 F.2d 798, 800–801, n. 4, cert. den. 412 U.S. 919, 93 S. Ct. 2734, 37 L.Ed.2d 145, argues that the pursuit of one's chosen profession is a fundamental right and that the Rule involved here must pass the "compelling state interest" test. We agree with the reasoning in *Lombardi* that such test is not applicable in this context. That reasoning, it would seem, has received added support in the decision of the court in *Rodriguez, supra*. And it was, as *Lombardi* emphasizes, the test as stated in Schware v. Board of Bar Examiners (1957) 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796.

Incidentally, the claim of the applicant in *Lombardi*, it would appear, was stronger than that of the plaintiff here. In that case, the Massachusetts Supreme Judicial Court, in fixing the standards for admission to its Bar, required that, to qualify to take

signed to meet a legitimate state goal and are related to a legitimate state interest. For this reason, they have been found invulnerable to constitutional attack on equal protection grounds. Illustrative of this conclusion are Goldsmith v. Clabaugh (1925), 55 App.D.C. 346, 6 F.2d 94, cert. den. 269 U.S. 554, 46 S.Ct. 18, 70 L.Ed. 408 (accountants); Fales v. Commission on Licensure to Prac. Heal. Art, *supra* (275 A.2d at 240) (doctors); O'Dell v. Ohio State Medical Board (1970) 22 Ohio Misc. 138, 259 N.E.2d 167 (chiropractors); Mercer v. Hemmings (1967) Fla., 194 So.2d 579 (accountants); Spindel v. Jamison, *supra* (103 S.E.2d 205) (professional engineers); People v. Griswold (1914) 213 N.Y. 92, 106 N.E. 929 (dentists); Bloom v. Mo. Board of Architects, Professional Engineers and Land Surveyors (1972) Mo.App., 474 S.W.2d 861 (architects); State v. Perkins (1934) 138 Kan. 899, 28 P.2d 765 (lawyers).[12] And, In Re Griffiths (1973) 413 U.S. 717, 733, 93 S.Ct. 2851, 2861, 37 L.Ed.2d 910, Chief Justice Burger, though dissenting on other grounds, used language that would seem conclusive on the validity of Rule 10's reciprocal provision as applied to attorneys. He observed that " * * * the States may well move to adopt, by statute or rule of court, a reciprocal proviso, familiar in other contexts; under such a reciprocal treatment of applicants a State would admit to the practice of law the nationals of such other countries as admit American citizens to practice. I find nothing in the core holding of Zschernig v. Miller, 389 U.S. 429 [88 S.Ct. 664, 19 L.Ed.2d 683] (1968), to foreclose state adoption of such reciprocal provisions. *See* Clark v. Allen, 331 U.S. 503 [67 S.Ct. 1431, 91 L.Ed. 1633] (1947)." In the light of this comment, backed up as it is by the unbroken line of authority on the point, it cannot be successfully argued that reciprocal professional licensing statutes or rules, enacted or promulgated under proper state authority, offend the equal protection clause.[13]

 In his argument in this Court, the plaintiff has gone beyond his "equal protection" contention and asserts that the Rule denies him rights guaranteed him under the "privileges and immunities" section of Article IV of the Constitution and of the first clause of the Fourteenth Amendment. The "privileges and immunities" provision of the Fourteenth Amendment provides no constitutional base for an attack on the Rule. The right of federal citizenship as reflected in the "right to travel" and as protected by this provision is not to be construed to mean that a citizen carries with him from state to state an ab-

---

the examination for admission, the applicant must show that he is a graduate of a qualified law school. The plaintiff had successfully completed all course requirements for graduation at a qualified law school but that school refused to award him a diploma because his pre-legal education, though meeting the requirements for admission to the Bar under the court's standards, did not satisfy the degree requirements of the law school. The Supreme Judicial Court applied strictly its rule and denied the applicant the right to take the Bar examination. This ruling was sustained against constitutional attack in *Lombardi.*

12. *See* Brown v. Supreme Court of Virginia, *supra* (359 F.Supp. at 557):
"* * * comity or reciprocity is essentially a state discretionary function in determining who should practice a given profession."

13. The result of any contrary conclusion can be easily foreseen. Indeed, the action of the South Carolina Supreme Court, faced with the threat of this action, is typical of the reaction that often would follow the invalidation of reciprocity legislation. When this action was begun, the South Carolina Supreme Court, as we have already noted, abrogated Rule 10, thereby imposing on all attorneys previously admitted to practice in another state the requirement of a written examination on their legal competency. Reciprocal legislation which will avoid this hardship for experienced attorneys seeking to move into another state to practice is appealing, even though the infrequent applicant from a state which denies reciprocity may be denied the benefits of such legislation. It is hoped that, with this finding that Rule 10 is without constitutional infirmity, the South Carolina Supreme Court may be prompted to reinstate Rule 10.

solute right of comity to practice, not a "common occupation", but a profession, which is properly subject to state regulation, in any state to which he travels, though this is essentially what the plaintiff, in the exposition of this contention, posits. The exercise by a state of power to regulate reasonably the practice of law within its jurisdiction and to require of any applicant, whether a resident or a migrant, that he demonstrate sufficient proficiency in the law as a prerequisite to a license to practice, is, as we have seen perfectly permissible and represents no violation of this provision of the Fourteenth Amendment. Kovrak v. Ginsburg, et al., Members of the Committee on Unauthorized Practice of the Law, (1958) 392 Pa. 143, 139 A. 2d 889, app. dis. 358 U.S. 52, 79 S.Ct. 95, 3 L.Ed.2d 46; West Virginia State Bar v. Earley, *supra* (109 S.E.2d 420); State v. Rosenkrans (1910) 30 R.I. 374, 75 A. 491, aff. 225 U.S. 698, 32 S.Ct. 840, 56 L.Ed. 1263. That regulations dealing with qualifications to practice a profession such as law or medicine are without what has been described as the "parameters of the *Shapiro* penalty analysis" follows, at least inferentially, from the language of the court in Memorial Hospital v. Maricopa County (1974) 415 U.S. 250, 259, 94 S.Ct. 1076, 39 L.Ed.2d 306, a case relied on by the appellant in argument in this Court. In that case, the Court made it clear that every state requirement that impinges to some extent on the right to travel is not *"per se* unconstitutional". (Page 256, 94 S.Ct. 1076) And, to give point to that language, the Court again cautioned, as it had done in *Shapiro*, "that it meant to 'imply no view of the validity of waiting-period or residence requirements determining eligibility [inter alia] to obtain a license to practice a profession, to hunt or fish, and so forth.'" (Page 259, n. 13, 94 S.Ct. page 1082). What is true of a residence requirement, as ap-

plied to the licensing of an applicant for the practice of a profession, is even more so of a requirement for the establishment of professional competency *via* a written examination. Indeed, the validity of the residence requirement has often been sustained only as an incident to the procedure for determining the competency of a migrant seeking professional licensing in a state.[14] Nor is there anything in Edwards v. California (1941) 314 U.S. 160, 62 S.Ct. 164, 86 L. Ed. 119, cited by the appellant in his brief, that lends any support to this phase of appellant's argument. The issue in that case was the validity of a statute which made it a criminal offense to bring or assist in bringing into the state an indigent. Such a statute manifestly placed a penalty on the right of a citizen to travel from state to state, imposed solely on account of his poverty. No state could condition the actual right to travel on a citizen's wealth. But here there is no condition on the appellant's actual right to travel; the only condition relates to his right to practice a constitutionally regulated profession within the state. The State had a perfect constitutional right to require of the appellant that he demonstrate his proficiency in the law by an examination; that it exempts from that requirement some applicants for reciprocity reasons which serve a legitimate "substantial" or "important"[15] state interest does not operate to relieve the appellant of so demonstrating his proficiency.

The argument that Article IV, § 2 denies to the state any right to enforce a rule such as Rule 10 is equally without merit.' The basic thrust of that section is to prevent "a state from discriminating against citizens of other states in favor of its own", Hague v. C. I. O. (1939) 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423. So long, then, as the State does not subject the migrant attorney, seeking the right to

---

14. Suffling v. Bondurant (D.C.N.M.1972) 339 F.Supp. 257, 259, aff. 409 U.S. 1020, 93 S. Ct. 460, 34 L.Ed.2d 312; Webster v. Wofford (D.C.Ga.1970) 321 F.Supp. 1259, 1262.

15. *See*, In Re Griffiths, *supra* (413 U.S. at 722, n. 9, 93 S.Ct. 2851, 37 L.Ed.2d 910).

practice in the State, to no more onerous requirements than those imposed on its own citizens seeking such right, it cannot be said that the State has violated the section.[16] The obligation, from compliance with which the plaintiff seeks by this action to be excused, is exactly the same obligation imposed indiscriminately by the State, through its Supreme Court, upon its own citizens in the same position as the plaintiff. As we have already pointed out, it is a requirement that is perfectly permissible. The only exception to this requirement, allowed by the Supreme Court of South Carolina, is in favor of that applicant, who, satisfying the other conditions of Rule 10, has been admitted to the practice in a state which grants to attorneys licensed in South Carolina reciprocal rights. Thus, whether he be a life-long citizen of South Carolina or an individual who, like the plaintiff, has just moved to South Carolina, his rights under Rule 10 are identical. Of course, it may be argued that, since Rule 10 requires normally at least five (5) years of active practice (which would in the circumstances have been necessarily outside South Carolina), the Rule confers a preference on the migrant attorney, a preference which one who has been a life-long citizen of South Carolina could not avail himself of. But simply because the plaintiff cannot qualify for this preference but must qualify on the same terms as the life-long citizen of South Carolina gives him no right to complain. This was made plain by the Court in the *Fales* case:

" * * * The right to practice is not a privilege or immunity of a citizen which is protected by the Constitution, since that secures to citizens of other states only the privileges which citizens of the state may have, and not the privileges which the citizens of the other state may have in their home state. People v. Griswold, *supra*. [213 N.Y. 92, 106 N.E. 929 (1914)] Therefore, the license creates no vested right which other states are bound to recognize. State v. Crombie, 107 Minn. 171, 119 N.W. 660 (1909); *see* Aitchison v. United States, *supra* [D.C.Mun.App., 98 A.2d 791, 793 (1953)]. And owing to its regulatory power over well-defined activities of its citizens, a state can make the extent of limitations and restrictions imposed upon such an activity dependent upon the attitude and actions of sister states with regard to analogous activities of their citizens." (275 A.2d at 240).[17]

Naturally enough, the plaintiff wishes to secure an exemption from the examination requirement and complains of the hardship involved in being forced to take such an examination. His position, however, is no different from that of the South Carolina attorney who wishes to move to New Jersey. The latter, in order to qualify in New Jersey, must submit to a written examination. But the hardship encountered by the plain-

16. *See*, for instance, Doe v. Bolton (1973) 410 U.S. 179, 200, 93 S.Ct. 739, 751, 35 L. Ed.2d 201, where the residence provision of the Georgia abortion statute was found violative of the "privileges and immunities" provisions of Article IV because it discriminated against non-residents by confining "to its own residents the general medical care available within its borders." In short, it was the preference given the State's own residents that rendered these provisions of the statute void under Article IV, § 2.

Similarly, in Memorial Hospital v. Maricopa County, *supra*, the denial of medical supplies essential to life was denied to the migrant who had not lived within the county for at least a year but did not apply to those who had lived more than a year in such county. There was accordingly a clear distinction made between the migrant and the local citizen. In this case, however, the migrant is subjected to no different treatment from that extended to the long-time resident. The only distinction is that between classes of migrants—a distinction made to serve a legitimate state interest. *See*, In Re Griffiths, *supra* (413 U.S. at 721–722, 93 S.Ct. 2851) ; Fales v. Commission on Licensure to Prac. Heal. Art, *supra* (275 A.2d at 240).

17. *See, also*, Chatkin v. University of Illinois (1952) 411 Ill. 105, 103 N.E.2d 498, 502–503.

tiff or by the South Carolina attorney moving to New Jersey will not be obviated by striking down reciprocity legislation. The hardship will only be alleviated by the adoption of reciprocity provisions in connection with professional licensing procedures in those few states which, like New Jersey, continue to deny the privilege. And that end will be promoted, not by voiding, but by upholding, the constitutionality of reciprocal legislation as promoting a legitimate public goal. Were the constitutional validity of reciprocal legislation doubtful, this circumstance would weigh heavily in favor of validity. Fortunately, however, for the reasons already assigned, the validity of such legislation is not doubtful.

For the reasons stated, we affirm the conclusion of the District Court that Rule 10, as applied to the appellant, was a valid exercise of powers on the part of the Supreme Court of South Carolina.

Affirmed.