**Mark Harold SHENFIELD et al.,
Plaintiffs,**

**v.**

**The Honorable Lenore PRATHER, Chancellor, Fourteenth Chancery Court District, et al., Defendants.**

**No. EC 73–20–K.**

United States District Court,
N. D. Mississippi, E. D.

Dec. 20, 1974.

Mark Shenfield, Jackson, Miss., for plaintiffs.

Ed Davis Noble, Jr., Asst. Atty. Gen., Jackson, Miss., for defendants.

Before COLEMAN, Circuit Judge, and KEADY and SMITH, District Judges.

KEADY, District Judge:

■■ This class action was brought by eight recent graduates of accredited law schools who are required by § 73-3-9, Miss.Code Ann. (1972),[1] to take and pass a bar examination prior to admission to the practice of law in Mississippi. Joining the chancery court judges of Mississippi as class defendants, plaintiffs challenge as unconstitutional the state's bar admissions plan, which requires a bar examination for all persons seeking admission to the Mississippi bar except graduates of the University of Mississippi School of Law,[2] and attorneys who have practiced for 5 years in states granting reciprocal admission privileges to Mississippi attorneys.[3] Plaintiffs seek injunctive and declaratory relief from this scheme under 42 U.S.C. § 1983, alleging that enforcement of the bar examination requirement against plaintiffs and the classes they represent deprives them of rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment. Jurisdiction is properly laid under 28 U.S.C. § 1343.[4]

■ Since the plaintiffs demanded injunctive relief from the enforcement of these statutes of statewide application on federal constitutional grounds, a

1. "Every person desiring admission to the bar, excepting those persons exempt by sections 73-3-25 and 73-3-33 shall be required to take and pass the bar examination in a manner satisfactory to the board of bar admissions."

2. "Any person holding a diploma granted by the University of Mississippi conferring upon him the degree of bachelor of laws, and in addition thereto, possessing all of the qualifications hereinbefore required, in order to be eligible to the examination for admission to the bar, and desiring to obtain a license to practice law in courts of this state, shall file and present an ex parte petition, under oath, to the chancery court or chancellor of the county of his residence, or of the county in which petitioner intends to practice, or to the chancery court or chancellor of Lafayette County, Mississippi, alleging such desire and clearly setting forth the facts and qualifications above mentioned with a copy of said diploma attached thereto. And the court or chancellor, upon hearing of said petition, in term time or in vacation, shall carefully inquire into the moral character of the petitioner, his said other qualifications, examine original of said diploma, and, if fully satisfied that the petitioner is of good moral character and otherwise qualified, shall not examine the petitioner as to his legal qualifications, but shall have entered on the minutes of said court an order granting to the petitioner a license to practice law in all of the courts of this state, both of law and equity, upon petitioner paying all costs in said cause, and taking oath prescribed by law." Miss.Code Ann. § 73-3-33 (1972).

3. "Any lawyer from another state whose requirements for admission to the bar are equivalent to those of this state, who has practiced not less than five (5) years and who has resided in this state for not less than six (6) months immediately preceding his application for admission to practice in this state, may be admitted to the practice in this state without examination as to his knowledge of law upon complying with the other requirements as set out in governing admission to the bar. Provided, however, the laws of the state from which the applicant comes grant similar privileges to applicants from this state. . . . ." Miss.Code Ann. § 73-3-25 (Supp.1974).

4. Since plaintiffs make not insubstantial claims under the Fourteenth Amendment, the so-called "Theard Doctrine" that states control professional licensing to the exclusion of the federal courts is inapplicable to defeat our jurisdiction. Constitutional claims are adjudicable in the federal courts in the professional licensing context as well as in other areas. Compare Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957), with Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). See Chaney v. State Bar of Calif., 386 F.2d 962 (9 Cir. 1967); Hackin v. Lockwood, 361 F.2d 499 (9 Cir. 1966); Keenan v. Board of Law Examiners, 317 F.Supp. 1350 (E.D.N.C.1970, 3-judge court); Lipman v. Van Zant, 329 F.Supp. 391 (N.D.Miss.1971, 3-judge court); Brown v. Supreme Court of Va., 359 F.Supp. 549 (E.D.Va.1973, 3-judge court).

three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284. After evidentiary hearing, the case was submitted upon the testimony of witnesses, affidavits, and stipulated facts. Extensive briefs have also been filed, including helpful presentations from the University of Mississippi School of Law, which accepted the court's invitation to participate amicus curiae. Although the case presents issues which are primarily questions of law, some discussion of the pertinent factual background is in order.

■ The named plaintiffs are all graduates of duly accredited law schools located outside the State of Mississippi. Some of the plaintiffs have in addition been admitted to the practice of law in states other than Mississippi.[5] Each of the plaintiffs has sought admission to the Mississippi bar and each has been required to take and pass the bar exami-

nation before being admitted to practice in the state. The record discloses that five of the plaintiffs—Shenfield, Walker, Bergmark, Andalman, and Brothers —have successfully passed the bar examination and have now been admitted to practice in Mississippi. It also appears that plaintiffs Osborne, Lile and Adelman have each taken the bar examination one or more times, but have not passed.[6]

■ Plaintiffs seek to represent, and the court finds that they do in fact represent, two sub-classes of affected individuals: first, the class consisting of graduates of accredited schools of law other than the University of Mississippi School of Law who meet all requirements for admission to the Mississippi bar except for the bar examination requirement; and second, the class consisting of attorneys admitted to the

5. Plaintiff Mark Harold Shenfield is a graduate of Boalt Hall, the School of Law of the University of California at Berkeley, and has been admitted to the practice of law in California. Plaintiff Shenfield has been a resident of Mississippi since September 12, 1972. Plaintiff Martha Bergmark is a graduate of the School of Law of the University of Michigan and a long-time resident of Mississippi. Plaintiff Elliot Andalman is a graduate of the School of Law of the University of Michigan and has been a Mississippi resident since June 1, 1973. Plaintiff John Brothers is a graduate of the School of Law of Cornell University and has been a resident of Mississippi since June 1972. Plaintiff Michael Adelman is a graduate of the School of Law of the University of Michigan and has been licensed to practice, and has practiced, law in Michigan more than 5 years. Plaintiff Adelman has been a resident of Mississippi since November 1, 1973. Plaintiff Alfred Lile is a graduate of the School of Law of North Carolina Central University. Plaintiff Solomon Osborne is a graduate of the School of Law of the University of Illinois. Plaintiff Randolph Walker is a graduate of the School of Law of George Washington University. Although no claim of Mississippi residency is made for these last three plaintiffs, it is alleged that they are fully qualified to practice law in Mississippi except that they have not passed the state bar examination.

6. The original complaint in this action, filed February 21, 1973, included only Mark Shen-

field as a named plaintiff. When Shenfield took and passed the March 1973 bar examination and was admitted to the bar on May 15, 1973, the defendants suggested that the case should be dismissed for mootness. Although the complaint has since been thrice amended, with named plaintiffs added, defendants have renewed their mootness arguments, which we now reject. Aside from the present existence of three named plaintiffs who have not achieved the relief they seek, and the familiar rule that class claims are not mooted by settlement with the class representative, it is clear that the present claims fall within the "capable of repetition" exception to the mootness doctrine. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 2d 147 (1973); Dunn v. Blumstein, 405 U.S. 330, 333, n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); United States v. Concentrated Phosphate Export Ass'n., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). The alleged injuries done the present plaintiffs by the challenged Mississippi statutes will inevitably be repeated each time a member of the class seeks admission to the Mississippi bar. That some of the present plaintiffs have attained the benefits sought by passage of the examination rather than by any manipulative actions of the defendants seems to us insignificant. The present situation still concerns the resolution of a continuing series of controversies so short-lived that if treated individually they might evade judicial review altogether, and is therefore deserving of "capable of repetition" treatment.

practice of law in states other than Mississippi who are not exempt from the bar examination and who satisfy all criteria for admission to the Mississippi bar except for the bar examination requirement. Defendants named in the complaint are themselves sued as representatives of a class consisting of all the chancellors of the chancery court districts of the State of Mississippi. The court finds that plaintiffs and defendants and the classes they purport to represent meet Rule 23 prerequisites; this case is properly maintainable as a class action.

Mississippi's statutory law specifies three methods by which persons meeting other qualifications not relevant here may be admitted to the Mississippi bar.

The first avenue is provided by the "diploma privilege" of § 73–3–33 which allows graduates of the University of Mississippi School of Law to be admitted to the bar upon ex parte petition to the appropriate chancery court, without the necessity of examination.[7]

Applicants may also be admitted to the bar without examination through the reciprocity provisions of § 73–3–25, which allows out-of-state attorneys with 5 years experience in practice and who have resided in Mississippi for 6 months immediately preceding their application to be admitted to practice, provided the state from which the applicant comes maintains equivalent requirements for bar admission and grants reciprocal privileges to Mississippi attorneys. Mississippi now practices reciprocity with approximately 37 other states.[8]

The final method of admission to the Mississippi bar is by submitting to, and passing, a written bar examination, which is prepared and administered by the Board of Bar Admissions, a body composed of six attorneys licensed to practice in the State of Mississippi.[9] Board members are nominated by the state supreme court and appointed by the governor.[10]

In addition to investigating the moral qualifications of all applicants, the

---

7. The diploma privilege of § 73–3–33 finds its antecedent in Miss.Laws of 1857, Ch. 9, Art. 1, in which the legislature provided that "a diploma granted by the State University, conferring the degree of bachelor at law upon students of the law class, shall be equivalent to a license granted by a court as aforesaid."

Amendments to the diploma privilege statute have been formal only, and the present statute dates to 1916. Miss.Laws of 1916, Ch. 107, § 10. As in the case of the bar examination requirement, there exists no written evidence of the legislative intent concerning the diploma privilege.

8. The reciprocity provisions of § 73–3–25 are of a considerably later vintage. Some provision for admission of out-of-state attorneys to the permanent practice of law in the state has existed since 1920. Hemingway's Code, § 185b (Supp.1921). Until 1974, the reciprocity statute required a two-year period of residency in the state before otherwise qualified attorneys could be admitted to practice here without examination. This lengthy period doubtless had the effect, perhaps desired, of discouraging nonresident attorneys from moving into the state. In 1974, however, the legislature shortened the § 73–3–25 residency requirement to 6 months, thus fa-

cilitating the operation of the reciprocity statute.

9. The composition of the Board of Bar Admissions, the enumeration of its powers, and the procedure and structure of the bar examination are found in Miss.Code Ann. §§ 73–3–1 to 73–3–33 (1972).

10. An examination of the legal learning of applicants to the bar has been required in Mississippi, in one form or another, since 1799, 18 years before statehood. See Hutchinson's Code, "Analytical Compilation of the Public and General Statutes of the Territory and State from 1799 to 1848." Early bar examinations consisted of questions propounded orally to examinees by designated state court judges. See, e. g., Miss. Laws of 1857, Ch. 9, Art. 1.

By 1906 the procedure had become somewhat more formalized, with written examinations required in a specified list of subjects. The tests were still composed and given by individual chancellors, however, without statewide uniformity. Miss.Laws of 1906, Ch. 12, §§ 208–213. This ad hoc system continued in the state until 1916 when a State Board of Law Examiners consisting of three attorneys appointed by the governor was created to prepare and administer a bar examination

Board is empowered to prepare and administer to applicants not falling within the diploma privilege and reciprocity exemptions an examination designed to test the applicants' legal learning. This examination, which is currently offered twice each year, covers 13 subjects, 12 of which are required by statute.[11] Subjects are covered in separate sections of the examination, which consists of short essays, hypothetical problems, and definition questions familiar to law students. The examination is directed at the applicant's knowledge of legal principles and state and federal statutory and constitutional law. It does not purport to examine skill in trial advocacy, writing ability, negotiation, client relations, or business acumen. It does not test maturity, sound judgment, tenacity, or a practical knowledge of legal or governmental affairs. Upon an applicant's completion of the examination, it is graded by the Board, which assigns a passing or failing grade for each section. By present practice the Board designates a percentage score of 70 as the minimum passing grade for each section. Although applicants must successfully pass each of the 13 sections of the examination to be admitted to the bar, an applicant who passes at least one-half of the subjects on which he is examined at any examination period is required to be reexamined only on those subjects in which he has failed to achieve passing grades. Applicants who fail more than one-half of the subjects receive no credit for any subject passed and must repeat the entire examination. There is no limit to the number of times an unsuccessful applicant may take the bar examination.

As previously noted, Board members are attorneys licensed to practice in the State of Mississippi; as such practitioners they must be presumed to possess wide knowledge of the subject matters covered by the examination. None of the present board members, however, has had specialized training in the field of testing, and the bar examination itself has never been validated as a reliable test of legal skills by educational psychologists or other experts in the field of testing. The evidence reveals that every state in the union currently uses the bar examination method to admit attorneys to practice, that only six states now employ professionals trained in the field of testing to assist the bar examiners, and that the remaining 44 states, including Mississippi, prepare and administer bar examinations without such expert guidance.

Mississippi law thus creates two classes of applicants for admission to the state bar: One, the favored class, is admitted to the practice of law without the necessity of examination, through the diploma privilege or reciprocity exemption; the other, the disfavored class, must take and pass the bar examination prior to admission. This class includes graduates of accredited law schools other than the University of Mississippi (and hence outside the state) and sister-state attorneys who do not meet the state's reciprocity requirements.

Plaintiffs, who are members of the disfavored class, claim that this statutory arrangement fails to satisfy the requirements of the Equal Protection Clause in several respects. Plaintiffs' first and most serious contention is that the bar examination statute, by imposing on them the onerous examination requirement not demanded of the favored class, thereby penalizes the exercise of plaintiffs' fundamental right to inter-

on selected legal topics. Miss.Laws of 1916, Ch. 107.

Although subsequent amendments to the 1916 statute have changed the name and composition of the Board, the essential format of a board of gubernatorially-appointed attorneys who prepare and administer a standardized bar examination remains the same today.

11. Miss.Code Ann. § 73–3–19 (1972). Torts is the additional tested subject. Applicants for the bar examination must be residents of Mississippi at time of application and must apply at least 90 days prior to the date of the examination. See § 73–3–11 and Lipman v. Van Zant, 329 F.Supp. 391 (N.D.Miss. 1971, 3-judge court).

state travel. Plaintiffs' thesis is that the two groups who comprise the disfavored class of bar applicants are placed in that class solely because they have exercised their right to travel by attending accredited law schools elsewhere and by seeking to enter Mississippi as practicing attorneys. The penalty imposed by the state bar examination cannot stand, plaintiffs argue, unless necessary to promote a compelling state interest. Plaintiffs assert that no such interest is here present and that the examination requirement is invalid, at least insofar as it applies to them and to members of their class.

Plaintiffs contend in the alternative that the classifications created by the diploma privilege and reciprocity exemption are arbitrary and unrelated to any legitimate state purpose and hence violate equal protection, even when judged by the traditional, rational relation standard of review. Finally, plaintiffs urge that the bar examination itself, as it is currently administered in Mississippi, denies them equal protection in that the content and grading of the examination bears no rational relation to professional competence in the practice of law.

Each of plaintiffs' challenges must fail, for we are satisfied that the Mississippi bar admissions plan does not impermissibly infringe on the right to interstate travel, and that the diploma privilege, reciprocity exemption, and bar examination currently employed are all rationally related to substantial state interests.

## I. *The State Plan Does Not Infringe On The Right to Travel*

Although freedom of interstate travel is not explicitly mentioned in the Constitution, it has long been acknowledged as occupying

> "a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized. . . . Although the . . . right finds no explicit mention in the Constitution

. . . freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." United States v. Guest, 383 U.S. 745, 757–758, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1966) (Citations omitted).

Not only has the right to interstate travel received constitutional protection, it has, at least in some circumstances, been recognized as being among those "fundamental rights" protected by strict judicial scrutiny. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dunn v. Blumstein, supra; Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). Equal protection analysis, of course, is two-tiered. Ordinarily, a legislative classification need only be rationally related to a legitimate state purpose to satisfy the demands of the Fourteenth Amendment. Classifications based on suspect criteria, such as race or nationality, or which affect interests denominated as "fundamental", call for strict judicial scrutiny and are constitutionally infirm unless demonstrably necessary to the promotion of a compelling state interest. See Shapiro v. Thompson, supra, 394 U.S. at 655, 89 S.Ct. 1322 (Harlan, J. dissenting).

A central question here is whether the bar examination statutes penalize the exercise of plaintiffs' right to interstate travel to such a degree as to invoke strict scrutiny analysis. Although the parameters of the right to travel are not yet fully defined, we conclude that plaintiffs' fundamental right to travel is not infringed by the bar admission plan, and that strict judicial scrutiny is thus inappropriate.

In Shapiro v. Thompson, supra, plaintiffs challenged state laws which denied welfare assistance to applicants who had not resided within the state for at least one year immediately preceding their application. In voiding the lengthy durational residency requirement, which deprived recently-arrived indigents of

"the very means to subsist—food, shelter, and other necessities of life," the Supreme Court said:

"The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional." Shapiro, supra, 394 U.S. at 634, 89 S.Ct. at 1331.

That this sweeping language is not to be taken literally is manifested by the enigmatic footnote 21:

"We imply no view of the validity of waiting-period or residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." Shapiro, supra, 394 U.S. at 638, n. 21, 89 S.Ct. at 1333. (Emphasis added).

The court thus enumerated a list of contexts in which apparent restrictions on the right to travel might not rise to the level of unconstitutional infringement. In Dunn v. Blumstein, supra, the court winnowed the list by striking, as violative of the right to travel, Tennessee's one-year durational residency requirement for voting in state elections.

In Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), however, the Court served notice that not all durational residency requirements burden interstate travel sufficiently to trigger the strict scrutiny analysis of Shapiro and Dunn. In Vlandis, the Court invalidated as violative of the Due Process Clause a Connecticut statute which permanently classified out-of-state applicants to state universities as nonresidents for the purpose of determining tuition and fees. Although this permanent classification was held to create an unconstitutional irrebuttable presumption, the Court expressly approved durational residency requirements of reasonable length for nonresident university students who wish to become residents.[12]

This explicit approval of a durational residency requirement in the student tuition context was accomplished by language which leaves no doubt that the rational relation standard of review is to be applied in such a case. In light of Shapiro's recognition of the right to interstate travel as a fundamental one whose infringement necessitates strict scrutiny analysis, it was clear, after Vlandis, that not all apparent penalties on interstate travel implicate the constitutionally guaranteed right to travel.

The Supreme Court extensively addressed the right to travel problem most recently in Memorial Hospital v. Maricopa County, supra. There, one year's residency within the state was required by Arizona statute for indigents to receive nonemergency hospitalization or medical care at public expense. In invalidating the Arizona statute as an encroachment on the right to travel unnecessary to the promotion of a compelling state interest, the Court outlined a rationale by which its earlier holdings in Shapiro, Dunn, and Vlandis might be reconciled.

The Court began by stating what Vlandis had implicitly held, that although all durational residence requirements carry with them some impediments on the right to travel, not all such

---

12. Vlandis, supra, 412 U.S. at 452–453, 93 S.Ct. 2230. In this connection, the Court cited with approval Starns v. Malkerson, 326 F.Supp. 234 (D.Minn.1970, 3-judge court), in which the district court, applying the rational relation test, upheld a one-year durational residency requirement to establish residency for university tuition purposes.

factual impediments have constitutional dimensions. *Memorial Hospital* 415 U.S. at 256–257, 94 S.Ct. 1076. In determining when the fundamental right of travel is sufficiently impeded to activate strict scrutiny analysis, the amount of actual impact on the right is dispositive. This impact may occur in two contexts. First, the Court considers the extent to which any state action deters interstate travel. Secondly, regardless of any deterrent effect, the Court examines the severity of the penalty imposed on those who exercise the right to travel.[13] In determining the extent to which the interstate traveler is penalized, we understand the Supreme Court's inquiry to focus on the gravity of the particular governmental benefit denied.

"In Dunn v. Blumstein, supra, the Court found that the denial of the franchise, 'a fundamental political right,' Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 1382, 12 L.Ed.2d 506 (1964), was a penalty requiring application of the compelling state interest test. In Shapiro, the Court found denial of the basic 'necessities of life' to be a penalty. Nonetheless, the Court has declined to strike down state statutes requiring one year of residence as a condition to lower tuition at state institutions of higher education.

Whatever the ultimate parmeters of the Shapiro penalty analysis, it is at least clear that medical care is as much 'a basic necessity of life' to an indigent as welfare assistance. And, governmental privileges or benefits necessary to basic sustenance have often been viewed as being of greater constitutional significance than less essential forms of governmental entitlements." *Memorial Hospital*, supra, 415 U.S. at 259, 94 S.Ct. at 1082–1083.

■ *Memorial Hospital* suggests, then, that at least in the absence of hard evidence of a deterrent effect on interstate migration, only classifications which deprive newly arrived residents of "vital governmental benefits and privileges" will be held to impose penalties on the right to travel sufficient to trigger strict scrutiny analysis. Conversely, classifications which disadvantage interstate travelers, but to a considerly lesser degree, do not impinge on the fundamental right to travel and must withstand only rational relation examination.[14]

Further support for our view is provided by Huffman v. Montana Supreme Court, 372 F.Supp. 1175 (D.Mont.1974, 3-judge court), aff'd mem., 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974). In *Huffman*, plaintiffs challenged a Montana statute exempting graduates of the University of Montana Law School from the bar examination requirement demanded of all other applicants to the Montana bar. The district court in *Huffman* upheld the Montana diploma privilege in the face of right-to-travel arguments, applying rational relation analysis.[15] We believe the Supreme

---

13. *Memorial Hospital* 415 U.S. at 257, 94 S. Ct. 1076, *Dunn* had earlier held that actual deterrence of interstate travel was unnecessary to a finding of infringement on the right to travel. Strict scrutiny is also appropriate where such travel is penalized by state action. *Dunn*, supra, 405 U.S. at 339–340, 89 S.Ct. 361.

14. That this comparison of benefits analysis is a proper reading of *Memorial Hospital* is reinforced by the Court's approving citation of Starns v. Malkerson, 326 F.Supp. 234 (D.Minn.1970), aff'd mem., 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971) ; and Kirk v. Board of Regents, 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969), in which high-

er university tuition fees for nonresident students were upheld by contrasting the higher tuition rates with the vital benefits deprived in *Shapiro*. *Memorial Hospital* 415 U.S. at 260 n. 15, 94 S.Ct. 1076.

15. Other federal courts have rejected right-to-travel arguments in bar admission cases and applied the rational relation test to challenged requirements. Lipman v. Van Zant, supra ; Suffling v. Bondurant, 339 F. Supp. 257 (D.N.M.1972, 3-judge court), aff'd sub nom. Rose v. Bondurant, 409 U.S. 1020, 93 S.Ct. 460, 34 L.Ed.2d 312 (1972) ; Kline v. Rankin, 352 F.Supp. 292 (N.D.Miss.1972), rev'd on other grounds, 489 F.2d 387 (5 Cir. 1974).

Court's summary disposition of *Huffman* is consistent with our analysis here, and that it supports the proposition that the governmental benefit there denied— the ability to practice law without undergoing an examination of professional competence—is not sufficiently vital to infringe the plaintiffs' fundamental right to interstate travel.

It seems quite evident that the governmental benefit for which plaintiffs contend in this action has more in common with the tuition at stake in *Vlandis* than with the vital benefits at issue in *Shapiro, Dunn,* and *Memorial Hospital.* Indeed, we know of no judicial precedents that regard one's ability to practice law without undergoing an examination of professional competence as a fundamental right, or as a benefit comparable in importance to welfare benefits, medical care or voting. Moreover, no evidence has been presented, and there is no basis for concluding, that Mississippi's bar examination is apt to deter the migration of professionally qualified attorneys into the state. Whatever may be the impact of the bar admission plan on those who engaged in interstate travel, it does not offend the right of travel safeguarded by the Constitution.

## II. *The Bar Admission Plan is Rationally Related to Proper State Goals*

■ We next consider the diploma privilege, reciprocity exemption and bar examination provisions in light of plaintiffs' equal protection claims. The judicial precedents make clear that, absent suspect criteria, constitutional challenges to professional licensing statutes are to be judged by the rational relation standard of review. Martin v. Walton, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed. 2d 5 (1961); Schware v. Board of Bar Examiners, supra; Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); Kotch v. River Port Pilot Commissioners, 330 U. S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923);

Whitfield v. Illinois Board of Bar Examiners, 504 F.2d 474 (7 Cir., 1974); Chaney v. State Bar of California, supra; Hackin v. Lockwood, supra; Kline v. Rankin, supra; Suffling v. Bondurant, supra; Lipman v. Van Zant, supra. Plaintiffs' contentions will be analyzed in accordance with that standard.

### A. *The Diploma Privilege*

Mississippi law exempts graduates of the state-supported law school from the bar examination requirement demanded of graduates of all other law schools. Plaintiffs attack this diploma privilege as arbitrary state action unrelated to preservation of the integrity of the bar.

■ To uphold the diploma privilege, it is unnecessary for defendants to demonstrate that every graduate of the University of Mississippi School of Law could pass the bar examination if required to do so. See Martin v. Walton, supra; Colgate v. Harvey, 296 U.S. 404, 436, 56 S.Ct. 252, 80 L.Ed. 299 (1935); Whitfield v. Illinois Board of Law Examiners, supra. Nor is it required that the diploma privilege be shown to be essential to ensure legal representation of high quality. What is required, and all that is required, is that there exist legally significant differences between University of Mississippi law graduates and graduates of other accredited law schools upon which the state legislature could rationally base this distinction. We consider the evidence bearing upon this issue.

The most significant differences between the University of Mississippi School of Law and other law schools relate to curriculum requirements and content. The curriculum at the University is somewhat more rigid than that of most American law schools. As reflected in the current law school bulletin, of the 90 semester hours required for graduation, required courses occupy 58 hours, or about two-thirds of the students' course content. It is worthy of note that the subject matter covered by these required courses is practically identical to the subjects tested on the bar

examination.[16] Several of these required courses—Circuit Court Practice, Chancery Court Practice, and Moot Court I—consider Mississippi law only. Many other required courses, although taught primarily from a national perspective, emphasize Mississippi statutes and rules applicable to the subject matter covered.[17] In the elective curriculum also, many courses are devoted primarily to an examination of state practices, while in other courses the Mississippi viewpoint is emphasized. Plaintiffs have not presented to the court the curriculum requirement in force at other accredited law schools, but it is quite improbable that courses offered at law schools outside the state provide the close correlation to Mississippi law and practice and the state bar examination which the University of Mississippi's curriculum possesses.

The University law school is distinctive in other respects. More than 50% of the faculty are attorneys who formerly practiced within the state, and all Mississippi-oriented courses are taught by former state practitioners. University graduates, more than 90% of whom reside within the state, receive a legal education which virtually presupposes a Mississippi practice. These graduates must have satisfied, through curriculum requirements, substantially the same standards demanded by the bar examination. Further, as a state-supported institution for which the legislature must annually make substantial appropriations, the law school is closely monitored to ensure its continuing orientation toward Mississippi's legal needs. It is indisputable that no other accredited law school maintains such a close connection with Mississippi and its juris-

| 16. BAR EXAMINATION SUBJECTS REQUIRED BY § 73-3-19 | REQUIRED CURRICULUM OF THE UNIVERSITY OF MISSISSIPPI SCHOOL OF LAW |
| --- | --- |
| 1. Real property law) 2. Personal property law) | Property (7 hrs. 1st year) |
| 3. Pleading and evidence | Civil Procedure (2 hrs. 1st year) Evidence (3 hrs.) |
| 4. Commercial law | Contracts (6 hrs. 1st year) Commercial Law (6 hrs.) |
| 5. Criminal law | Criminal Procedure (3 hrs.) |
| 6. Chancery and chancery pleading | Miss. Chancery Court Practice (2 hrs.) |
| 7. Statute law of Miss. | Emphasized as applicable in all courses. |
| 8. Constitution of United States and Miss. | Constitutional Law (4 hrs. 1st year). Miss. constitutional law is not the subject of a separate course, but is emphasized as applicable throughout the curriculum. |
| 9. Federal and state practice | Federal Procedure (2 hrs. 1st yr.) Miss. Circuit Court Practice (2 hrs.) Moot Court (Trial and Appellate) (1 hr.) |
| 10. Federal statutes on the judiciary and bankruptcy | Federal Jurisdiction (3 hrs.) |
| 11. Professional ethics | The Legal Profession (1 hr.) |
| 12. "Other proper subjects" | Torts (6 hrs. 1st yr.), Introduction to Tax (4 hrs), Wills and Estates (3 hrs.), Legal Bibliography and Legal Writing (3 hrs. 1st yr.) |

17. Into this category fall Torts, Contracts, Property, Commercial Law, Wills and Estates, Evidence, Legal Profession, and Civil Procedure.

prudence. These considerations amply provide a reasonable basis for the state's legislature to exempt the University of Mississippi law graduates from taking the bar examination.

### B. *The Reciprocity Exemption*

Plaintiffs also challenge the reciprocity exemption, contending that none of its three requirements for reciprocal admission are rationally related to the state's legitimate objective of ensuring a competent bar. On the contrary, each prong of the three-pronged reciprocity exemption is supported by legitimate governmental objectives.

Sister-state attorneys wishing to be admitted to the practice in Mississippi without examination must first have practiced for not less than five years in a state whose bar admission requirements are equivalent to those of Mississippi. Since it is well settled that a state has a substantial interest in maintaining a competent bar,[18] and that in promoting that interest it is free to require applicants to meet high standards of professional competence, *Schware,* supra, it should be clear that it is within state power to accept without examination only attorneys admitted in jurisdictions which demand equally high standards. Further, Mississippi need not be bound by the determinations of its sister-states, however stringent their standards, but may require some additional demonstration of proficiency before examination is waived. Toward this end, it is certainly not irrational to conclude that five years' experience in active practice enhances legal competence. Thus, the first prong of the reciprocity exemption test passes constitutional muster.

Reciprocity applicants must also have resided within Mississippi for six months immediately preceding their application for admission. As the Supreme Court has made clear in the right-to-travel cases, bona fide residency requirements for governmental entitlements (as distinct from lengthy waiting period requirements) are constitutionally acceptable. *Memorial Hospital,* supra, 415 U.S. at 255, 94 S.Ct. 1076; *Dunn,* supra, 405 U.S. at 342 n. 13, 92 S.Ct. 995; *Shapiro,* supra, 394 U.S. at 636, 89 S.Ct. 1322. Indeed, this precise question was addressed by this court in Lipman v. Van Zant, supra, in which we held that a residency requirement for bar applicants "has a rational connection with an applicant's fitness or capacity to practice law, and hence does not offend the Equal Protection Clause." See also Suffling v. Bondurant, supra.

Further, in view of the state's substantial interest in investigating the moral character of the bar applicant (see *Konigsberg,* supra, and *Schware,* supra), we believe the 6-month delay between establishment of Mississippi residency and admission to the bar is reasonable. Suffling v. Bondurant, supra. In Lipman v. Van Zant, supra, this court invalidated as unreasonable a one-year waiting period for bar examination eligibility while approving a three-month delay for purposes of investigating the applicant's moral character. Although the waiting period at issue here is somewhat longer, we are unable to say that it is so lengthy as to be unduly burdensome to the applicant and not related to its investigatory function. The evidence shows that the Board of Bar Admissions employs a national service to investigate moral qualifications of out-of-state applicants, a practice employed in other states. While the time necessary to complete such investigations may vary in individual cases, the full six months is often required, and is regarded by bar examiners of many states as the minimum feasible time for thorough investigation.

The attorney seeking admission through the reciprocity exemption must also come from a state which grants similar privileges to Mississippi attorneys. Although it is true, as plaintiffs argue, that whether a sister-state juris-

---

18. In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973).

diction admits Mississippi attorneys by reciprocity has no bearing on the fitness of the individual applicant, it does not follow that the reciprocity requirement is therefore arbitrary, or that there are no other legitimate governmental objectives which it may promote. Reciprocity privileges are granted for the salutary purpose of facilitating professional persons in relocating elsewhere than in the state of original qualification. Certainly, reciprocity, which Mississippi practices with approximately 37 other states, does encourage attorneys to settle in the state. Also, out-of-state lawyers who may take up residence in this state are assured of ready access to practice in other states which have reciprocity with Mississippi. Finally, the reciprocity provisions assist Mississippi attorneys in relocating. These several considerations are more than adequate to uphold the state's reciprocity privilege as related to legitimate state objectives.

### C. *The Bar Examination*

Plaintiffs' final attack is on the bar examination itself, with their primary argument being that the examination has not been demonstrated to relate to the successful practice of law, and therefore cannot be assumed rational by this court.

We are unpersuaded by plaintiffs' argument that the bar examination as presently administered is invalid because it has not been subjected to expert testing to determine whether it is actually predictive of one's ability to be a successful practitioner. Absent claims of invidious discrimination—which are absent here—the presumption of invalidity may not be indulged.

■ Essay examinations legally indistinguishable from the one employed here have been upheld by other courts in the face of Fourteenth Amendment attacks. Whitfield v. Illinois Board of Bar Examiners, supra; Feldman v. State Board of Law Examiners, 438 F. 2d 699, 705 (8 Cir. 1971); Chaney v. State Bar of California, supra. We accept the authority of these decisions and hold that the Mississippi bar examination, which tests knowledge in 13 basic legal subjects and which requires applicants to demonstrate a capacity for legal analysis, is rationally related to competence in the practice of law.

■ Plaintiffs also complain of the arbitrariness of the selection of 70% as the passing score, and the requirement that all 13 examination sections be passed before admission. Although in the abstract all such minimum requirements are arbitrary, surely it is reasonable to require that applicant show some proficiency in the examined areas. Once it is agreed that some minimum standard is permissible, the question becomes one of degree. When viewed in this light, neither requirement is arbitrary. The 70% passing requirement, which has been adopted by 16 of the 24 states whose practice is known to us, is a reasonable yardstick by which competence in a given subject may be determined. Likewise, the 13 subjects currently examined are all basic legal areas in which the state may justifiably require some degree of competence.

In summary, we find that Mississippi has a strong and compelling interest in maintaining a qualified bar to serve the needs of the state and its citizens; that the three statutory methods of admission are reasonably and properly related to the attainment of legitimate state goals; and that the plan, as implemented, does achieve the intended salutary purpose of ensuring a competent bar, and in a manner which does not contravene constitutional rights.

Accordingly, let an order dismissing the complaint with prejudice be entered.