Thomas Alfred GOLDSMITH,
Plaintiff,

v.

E. E. PRINGLE et al., Defendants.

Civ. A. No. 74-A-982.

United States District Court,
D. Colorado.

Aug. 4, 1975.

Jonathon B. Chase, Boulder, Colo., for plaintiff.

Ruthanne Gartland, Asst. Atty. Gen., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

Before LEWIS, Circuit Judge, and ARRAJ and FINESILVER, District Judges.

ARRAJ, District Judge.

This action involves a constitutional challenge to the so-called "reciprocity rule" which governs admission to the Colorado bar of attorneys already licensed to practice law in other jurisdictions. Plaintiff Thomas Goldsmith is an attorney admitted to practice in Florida and California. He has established residence in the state of Colorado and has moved for admission to the Colorado bar as a "Class B" applicant, which is defined in Rule 202(2) of the Colorado Rules of Civil Procedure as follows:

> Class B applicants are those who have been admitted by examination to the Bar of another state, territory, or district of the United States, by the highest court therein having such power, and who at the time of their admission had attained qualifications at least equal to those then required for admission by examination in Colorado, and who have practiced five years out of the seven years immediately preceding application here.[1]

Attorneys who fall within this class of applicants may be granted a license to practice law in Colorado without sitting for, and passing, the state's bar examination. Mr. Goldsmith was admitted "by examination" to the bar of Florida in 1966 and the bar of California in 1973. It also appears that he has practiced five of the seven years immediately preceding his application in Colorado and that he meets all other requirements for admission in this state as a "Class B" applicant.

Plaintiff's request for admission on motion was denied by the Colorado Supreme Court. In a letter informing him of the court's decision, Mr. Justice Groves stated, "We do not admit on motion attorneys admitted in Florida or California as neither of these states will admit our lawyers on motion." This

---

1. At the time plaintiff made inquiries regarding possible waiver of the reciprocity requirement, the rules in effect differed from the rules discussed herein. These differences have no legal significance to the immediate controversy, and for the sake of clarity, we will refer to those rules appearing in C.R.S. (1973), v. 7 at pp. 565 and 566. [Rules 202(2) and 202(7)]. The previous rules may be found at C.R.S. (1963), v. 1, ch. 20 (Supp.1973) [Rule 202(B)].

policy of the Colorado Supreme Court is codified in Rule 202(7) of the Colorado Rules of Civil Procedure:

> If the jurisdiction from which an applicant in . . . Class B applies, imposes by any law, rule, or regulation, limitations, restrictions, or conditions upon the admission of members of the Bar of the State of Colorado seeking admission to the Bar of such jurisdiction, the Court may impose like restrictions, limitations, or conditions upon any such applicant seeking admission to the Bar of this State.
>
> . . .

After receiving notice that his motion had been denied and of the reason therefor, plaintiff commenced the instant action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201. He seeks both injunctive and declaratory relief from the operation of Rule 202(7) on grounds that the Rule violates the Equal Protection Clause of the Fourteenth Amendment.[2] Jurisdiction over the subject matter of the controversy is proper under 28 U.S.C. § 1343(3), and a three-judge district court has been convened in accordance with 28 U.S.C. §§ 2281 and 2284, as the latter provisions were interpreted by the Tenth Circuit Court of Appeals in *Rossiter v. The Law Committee of the State Board of Law Examiners*, Nos. 73–1649 and 73–1650 (10th Cir. Jan. 10, 1974) (unpublished opinion).

The matter is now before us on cross motions for summary judgment. The parties agree that no genuine issues of material fact remain and have submitted written memoranda in support of their respective positions. After considering these memoranda and the oral argument of counsel, we reach the following conclusions.

## I. *Standing*

In their brief, defendants contend that Mr. Goldsmith lacks standing to maintain this action. In particular, they argue that plaintiff never made a formal motion for admission to the Colorado bar and that if he did make such a motion, it is not certain that it would be denied sole'y on the basis of Rule 202(7). But from the uncontested affidavits of the plaintiff and from paragraphs VIII through XI of the Complaint, which paragraphs are admitted by defendants in their Answer, it appears that plaintiff sent a letter to the Colorado Supreme Court requesting "a ruling on the reciprocity issue before [he became] embroiled in the application process." The court considered this request *en banc* and decided that Rule 202(7) would not be waived. Plaintiff was informed of this decision by the aforementioned letter from Justice Groves, which explicitly stated that plaintiff's application would be denied on grounds of reciprocity.

In *National Student Association v. Hershey*, 134 U.S.App.D.C. 56, 412 F. 2d 1103 (1969), the court observed:

> [A] plaintiff need not invariably wait until he has been successfully prosecuted, dismissed, denied a license, or otherwise directly subjected to the force of a law or policy before he may challenge it in court. [*Id.* at 1110 (footnote omitted)]

What is required for standing in the present case is that plaintiff have a "personal stake" in the outcome and that the interests or personal rights he is asserting are directly threatened by the state action he is challenging. [*See, e. g., Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)]

---

**2.** In addition to the equal protection claim, the original Complaint filed in this case charged that Rule 202(7) constituted a "conclusive presumption," violative of the Due Process Clause of the Fourteenth Amendment. But in his Amended Complaint, plaintiff has omitted this latter claim, and from his briefs and oral argument, it appears that he has abandoned it entirely.

Under the circumstances of this case, we believe there is sufficient nexus between plaintiff's personal interests and the effects of Rule 202(7). Completion of the formal application process by plaintiff would have been little more than hollow formalism. It would add nothing to "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" [*Id.* 369 U.S. at 204, 82 S.Ct. at 703] We hold, therefore, that plaintiff does have standing to maintain this action.

## II. *The Equal Protection Claim*

Rule 202(7) results in a division of Class B applicants into two groups: (1) those admitted to practice in sister states which will admit Colorado lawyers on motion; and (2) those licensed in states which do not practice reciprocity with Colorado. The first group is exempted from the requirement of sitting for, and passing, the Colorado bar examination, while the latter group is or may be held to the examination requirement. This difference in treatment, according to plaintiff, violates the Equal Protection Clause.

Plaintiff concedes that Rule 202(7) neither impinges upon a "fundamental right" nor makes use of any "inherently suspect criteria." Thus, the classification created by the reciprocity Rule is not to be subjected to "strict judicial scrutiny," and defendants need not demonstrate a "compelling necessity" for the Rule. [*See, e.g., Hawkins v. Moss,* 503 F.2d 1171 (4th Cir. 1974), *cert. denied,* 420 U.S. 928, 95 S.Ct. 1127, 43 L. Ed.2d 400 (1975); *Lombardi v. Tauro,* 470 F.2d 798 (1st Cir. 1972), *cert. denied,* 412 U.S. 919, 93 S.Ct. 2734, 37 L. Ed.2d 145 (1973); *cf. Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955)] Instead, the ultimate decision in this case will turn on an application of the so-called "rational basis" test. Under this formula, Rule 202(7) will withstand plaintiff's equal protection challenge so long as it "rationally furthers a legitimate state purpose or interest." [*San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16 (1973); *see also, McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055 (1973) and cases cited therein at 270] For the reasons set forth below, we believe that Colorado's reciprocity Rule *is* constitutional when measured against this minimal standard.

We start with the premise that the personal well-being and professional development of an attorney may require that he periodically change jobs and that such changes may necessitate relocation to a different state than the one in which he is presently licensed. Colorado has a legitimate concern in easing the burdens of such relocation both as an abstract potential for all of its citizens and as an actual, concrete need for some. Specifically, Colorado has an interest in encouraging sister jurisdictions to recognize the professional license held by the Colorado attorney who wishes or needs to relocate. Rule 202(7) does provide such encouragement by lessening the burdens of admission to the Colorado bar *only* for those attorneys coming from states which lessen the burdens imposed upon Colorado citizens. This "selective mutuality" is the essence of reciprocity, and though the means employed may smack more of coercion than of comity, we cannot say they are wholly irrational.

Our research discloses two recently reported decisions which address the very issues presented here. In *Shenfield v. Prather,* 387 F.Supp. 676 (N.D.Miss. 1974) (three-judge court), the reciprocity Rule of Mississippi was upheld on the following grounds:

The attorney seeking admission through the reciprocity exemption must also come from a state which grants similar privileges to Mississippi attorneys. Although it is true, as plaintiffs argue, that whether a sister-state jurisdiction admits Missis-

sippi attorneys by reciprocity has no bearing on the fitness of the individual applicant, it does not follow that the reciprocity requirement is therefore arbitrary, or that there are no other legitimate governmental objectives which it may promote. Reciprocity privileges are granted for the salutary purpose of facilitating professional persons in relocating elsewhere than in the state of original qualification. Certainly, reciprocity, which Mississippi practices with approximately 37 other states, does encourage attorneys to settle in the state. Also, out-of-state lawyers who may take up residence in this state are assured of ready access to practice in other states which have reciprocity with Mississippi. Finally, the reciprocity provisions assist Mississippi attorneys in relocating. These several considerations are more than adequate to uphold the state's reciprocity privilege as related to legitimate state objectives. [*Id.* at 688–89]

Similarly, in *Hawkins v. Moss, supra,* the court rejected plaintiff's arguments that South Carolina's reciprocity provision was violative of equal protection:

> State reciprocity statutes or regulations . . . are not unusual. In fact, they have been adopted by the vast majority of the states and apply particularly in the field of professional licensing. They represent a state's undertaking to secure for its citizens an advantage by offering that advantage to citizens of any other state on condition that the other state make a similar grant. To secure for her citizens the reciprocal rights and advantages obtained under such statutes or rules is manifestly a legitimate interest and goal on the part of a state just as it is a legitimate interest of one nation to secure reciprocal property rights for its citizens in other nations. It is true, as the plaintiff argues, these statutes and rules treat differently those individuals admitted to practice their profession in states extending reciprocal rights and those from states not so granting those rights. But the mere fact that they "affect some groups of citizens differently than others" or that they "result in 'incidental individual inequality' " will not render such statutes or rules invalid. [503 F.2d at 1176–77 (footnotes omitted)]

We perceive no basis for distinguishing Colorado's reciprocity Rule from those of Mississippi and South Carolina, and plaintiff here has suggested no grounds for such a distinction. However, he does maintain that both *Shenfield* and *Hawkins* were decided erroneously for several reasons. Plaintiff's arguments in this regard are analyzed below.

### A. The "Singular Objective"

Plaintiff contends that there is *only one* permissible objective which a state may pursue in imposing restrictions on access to the bar, namely to guarantee that persons granted a license to practice law are "honest and competent." Any "other" objectives are, according to plaintiff, unconstitutional. For purposes of this argument, counsel relies primarily on the following language from *Schware v. Board of Examiners of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957):

> A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. . . . Obviously an applicant could not be excluded merely because he was a Republican or a Negro or a member of a particular church. [*Id.* 353 U.S. at 239, 77 S.Ct. at 756 (citations omitted)]

Admittedly, the governmental interests which support a state's reciprocity rule have nothing whatever to do with the moral character or professional competency of bar applicants. As the court in *Shenfield, supra,* remarked, "[W]hether

a sister-state jurisdiction admits Mississippi attorneys by reciprocity has no bearing on the fitness of the individual applicant . . . ." [387 F.Supp at 688–89]

But there is a fundamental flaw in plaintiff's position. *Schware* and its progeny involve *threshold* requirements imposed by states upon the very *access* to a professional license. If an applicant does not meet any one of these requirements, he may not secure a license even if he does comply with all other "qualifications." Seen in this light, *Schware* restricts the states in the *criteria* they may apply in *granting or denying* licenses to practice law. We, of course, agree that such criteria must be related to the singular objective of ensuring that attorneys are honest and proficient in the basic skills and knowledge of their profession. But the reciprocity Rule now before us involves *no* such criteria, since application of the Rule does *not* result in the granting or denying of a license. The fact that an applicant comes from a state which does not admit Colorado lawyers on motion does not mean that the applicant is ineligible to practice law in Colorado. It *does* mean that he must meet the state's examination requirement—which requirement is clearly related to the "singular objective" permitted by *Schware*.[3] [*See, e.g., Feldman v. State Board of Law Examiners,* 438 F.2d 699, 705 (8th

Cir. 1971); *Chaney v. State Bar of California,* 386 F.2d 962, 964 (9th Cir. 1967), *cert. denied,* 390 U.S. 1011, 88 S. Ct. 1262, 20 L.Ed.2d 162 (1968); *cf. Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474 (7th Cir. 1974)] The fact that other attorneys coming from states which do practice reciprocity with Colorado are exempted from the examination requirement represents a "difference in treatment" which *is* rationally related to the "other" governmental interests we have enumerated above. [*Cf. Brown v. Supreme Court of Virginia,* 359 F.Supp. 549 (E.D.Va.) (three-judge court), *aff'd mem.,* 414 U. S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327 (1973)][4]

Plaintiff directs our attention to the case of *In re Houston,* 378 P.2d 644 (Alaska 1963), wherein the court struck down a reciprocity rule apparently because it did not further the "singular objective" identified in *Schware.* However, the court in *Houston* did not consider the distinction we have drawn between criteria which disqualify an applicant from the practice of law and those which exempt *other* applicants from the "normal" requirements of admission. For this reason, we do not find *Houston* persuasive.

The other authorities upon which plaintiff relies are inapposite to the question before us. In each case,

---

3. By this statement, we do not mean to intimate any result in other litigation now pending in this district. For example, in *Pacheco v. Pringle,* No. C–5219, and *Vigil v. Pringle,* Nos. 74–A–433, 74–A–440, and 74–A–445, plaintiffs allege that the Colorado bar examination results in *de facto* discrimination against minority applicants. Our observation here is *only* that the *requirement* of passing *an* examination is reasonably related to the "singular objective" identified in *Schware.*

4. The "singular objective" argument which plaintiff makes here was squarely presented to the court in *Brown v. Supreme Court of Virginia, supra.* [*Compare,* majority opinion, 359 F.Supp. at 557, with dissenting opinion, 359 F.Supp. at 562–64] Since the

United States Supreme Court has affirmed the judgment of the majority in that case, even though without opinion, we believe it is impossible to reach any result here which is inconsistent with the majority's reasoning in *Brown.* In *Huffman v. Montana Supreme Court,* 372 F.Supp. 1175 (D.Mont.) (three-judge court), *aff'd mem.,* 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974), the lower court upheld Montana's "diploma privilege" rule against an equal protection challenge, and in doing so, apparently accepted the "singular objective" approach. Again the Supreme Court affirmed without opinion; however, we do not find in this precedent any inference that state objectives *other* than "assuring an applicant's fitness and competency to practice law" would have been rejected by the lower court.

the regulation under scrutiny either *per se* excluded the applicant [*see, e.g., Raffaelli v. Committee of Bar Examiners*, 7 Cal.3d 288, 101 Cal.Rptr. 896, 496 P.2d 1264 (1972)][5] or "effectively excluded" him from the practice of law [*see, e.g., Keenan v. Board of Examiners of State of North Carolina*, 317 F.Supp. 1350 (E.D.N.C.1970) (three-judge court)].[6] As we have already stated, Rule 202(7) does not operate to exclude plaintiff from the Colorado bar, and although the taking of an examination is more burdensome than the mere filing of a motion with supporting affidavits, we believe this burden is not so great as to constitute "effective exclusion" within the meaning of the precedents cited by plaintiff. We hold, therefore, that the state objective asserted in defense of Rule 202(7) is both "legitimate" and "constitutionally permissible."

## B. *The Separation of Powers*

In *People v. Buckles*, 167 Colo. 64, 453 P.2d 404 (1968), the Colorado Supreme Court upheld the constitutionality of a state statute which prohibited convicted felons from practicing law in Colorado. Respondent there had contended that the statute, enacted by the Colorado General Assembly, violated the separation of powers clause of the state constitution [Art. VI, § 1], because the authority to promulgate rules governing admission to the bar was vested exclusively in the Colorado Supreme Court [Art. VI, § 21]. In rejecting this argument, the court stated:

[The statute] declares, in effect, that a person convicted of a felony,

and who thereby subjects himself to a sentence to the state penitentiary, shall also suffer an *additional* penalty therefor, namely, that he be disqualified from . . . practicing as an attorney in any of our state courts. In other words, this disqualification constitutes a part of the *total* penalty prescribed by the legislature for anyone convicted of a felony.

Most certainly this statute in nowise interferes with our exclusive right to determine the rules and regulations which shall govern those seeking admission to our bar. Nor do we regard the statute as impinging in any real sense upon our further right to discipline those licensed by us to practice law. Rather, we regard this as simply an effort by the legislature under its police power to bar convicted felons from practicing law in our courts. And this, we hold, the legislature has the power to do. [*Id.* at 67–68, 453 P.2d at 405 (emphasis in original)]

By a "parity of reasoning" from *Buckles*, plaintiff here suggests that the subject of reciprocity, like the subject of "punishment for criminal conviction," is properly left, if at all, to the Colorado legislature.

■ Assuming, without deciding, that plaintiff's "extrapolation" of *Buckles* is correct, his argument raises an issue of state and not federal constitutional law. This same line of reasoning was analyzed by the court in *May v. Supreme Court of State of Colorado*, 508 F.2d 136 (10th Cir. 1974):

Plaintiffs argue that imposition and collection of a tax by the Colorado Su-

---

5. *Raffaelli* involved exclusion of aliens from the practice of law in California. [*See also, In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973)]

6. In *Keenan*, the court struck down a one-year residency requirement for admission to the North Carolina bar, because it was unrelated to the "singular objective" permitted

by *Schware*. Contrary to plaintiff's assertion here, a careful reading of the opinion in *Keenan* indicates that the court treated the residency requirement as an "effective exclusion" or alternatively, as a *per se* exclusion for one year. [317 F.Supp. at 1362; *see also, Brown v. Supreme Court of Virginia, supra* at n.10, p. 557]

preme Court usurps the powers of the legislative branch in violation of the Colorado Constitution's provisions for the separation of powers. This violation is offered as a violation of the Fourteenth Amendment's guarantees of due process and equal protection. The principle of separation of powers is not enforceable against the states as a matter of federal constitutional law. This was the holding of the Supreme Court in *Sweezy v. New Hampshire*, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 [(1957)] which is the controlling authority on this question. In accordance with the holding in *Sweezy*, we find that plaintiff's separation of powers claim is not a federal claim, and that federal jurisdiction under section 1343(3) is not available. [*Id.* at 139 (citations omitted)]

Moreover, had plaintiff sought to include this state constitutional claim in his Complaint, we would most likely have declined to exercise pendent jurisdiction over it. [*See, e.g., Whitfield v. Illinois Board of Law Examiners, supra* at 479]

■ In a related argument, plaintiff suggests that *"under Colorado law*, the Supreme Court of Colorado is limited, in adopting rules for admission to the bar, to ensuring the competence and integrity of the bar." We infer no such limitation, *as a matter of Colorado law*, from the precedents cited by plaintiff. But in any event, there is no *federal* constitutional significance in the fact that one branch of state government has exercised a power which it may not possess under the state constitution. Even if Rule 202(7) does violate Article VI of the Colorado Constitution, it does not follow that the Rule *itself* is not reasonably related to legitimate state objectives, within the meaning of federal equal protection doctrine. For the foregoing reasons, we reject plaintiff's separation of powers arguments.

## C. The "Ineffectiveness" of Rule 202(7)

■ Plaintiff's final contentions merit little comment. He notes that Rule 202(7) is poorly designed to achieve its ends and that in fact the number of jurisdictions which admit attorneys on motion has decreased in the last forty years. [*Compare*, Starr, *Reciprocal and Retaliatory Legislation*, 21 Minn.L.Rev. 271, 283 (1937) (cataloguing rules in effect on March 21, 1934) with *Brown v. Supreme Court of Virginia, supra* at 553] He further asserts that the primary or "true" purpose of Rule 202(7) is to burden and not to facilitate interstate travel.[7]

Nearly identical arguments were advanced by the plaintiffs in *Brown v. Supreme Court of Virginia, supra*. There the court held:

We are not here concerned with the wisdom of the Rule under attack and the Equal Protection Clause does not countenance speculative probing into the purposes of the Rule as long as it is not plainly arbitrary or discriminatory. . . . Nor need we concern ourselves with the primary or secondary purpose for the Rule. As Mr. Justice Powell said in *McGinnis, supra*:

"Yet our decisions do not authorize courts to pick and choose among legitimate legislative aims to determine which is primary and which subordinate. Rather, legislative solutions must be respected if the 'distinctions drawn have some basis in practical experience,' *South Carolina v. Katzenbach*, 383 U.S. 301,

---

7. Plaintiff does not suggest that Rule 202(7) penalizes the *"right* to interstate travel." He concedes that in light of *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), "such an argument would be a difficult one indeed." [*See also, Hawkins v. Moss, supra* at 1178–79]

331, 86 S.Ct. 803, 820, 15 L.Ed.2d 769 (1966), or if some legitimate state interest is advanced, *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). So long as the state purpose upholding a statutory class is legitimate and nonillusory, its lack of primacy is not disqualifying.

"When classifications do not call for strict judicial scrutiny, this is the only approach consistent with proper judicial regard for the judgments of the Legislative Branch. The search for legislative purpose is often elusive enough, *Palmer v. Thompson*, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971), without a requirement that primacy be ascertained. Legislation is frequently multipurposed: the removal of even a 'subordinate' purpose may shift altogether the consensus of legislative judgment supporting the statute." [*Id.* at 554–55 (footnote omitted)]

Though we may not find "compelling" the state interests which are furthered by Rule 202(7), we also do not believe these interests are "illusory." It may well be, as plaintiff contends, that the ultimate goals of reciprocity would be better served by an "open-door" policy —a policy by which qualified attorneys from *all* jurisdictions would be admitted on motion to the Colorado bar, irrespective of the corresponding policy of the state in which they were previously licensed. But observations such as these are of no consequence in the present case. They should instead be directed to the Colorado Supreme Court which has the power to make and change rules governing admission to the bar.

For the reasons set forth above, we hold that Rule 202(7) is reasonably calculated to further legitimate state objectives and that the Rule comports with the guarantees of equal protection.